FILED
United States Court of Appeals
Tenth Circuit

February 25, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ANDRE DAVIS,

Defendant-Appellant.

No. 09-3010

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 03-CR-10157-JTM)**

---

Gregory A. Prebish, Jackson, Wyoming (Dwight L. Miller, Topeka, Kansas, on opening brief) for Appellant.

David M. Lind, Assistant United States Attorney (Lanny D. Welch, United States Attorney, with him on the briefs) Office of the United States Attorney, Wichita, Kansas, for Appellee.

---

Before **HARTZ**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

Andre Davis was arrested in Kansas during a traffic stop after a search of his rental car revealed a bag containing cocaine. Prior to trial, the government gave notice pursuant to 21 U.S.C. § 851 it intended to use two prior convictions

to enhance Davis's sentence upon conviction. One conviction did not qualify for sentencing enhancement because it occurred in Indiana after Davis's arrest in Kansas, but the other, although it listed the wrong case number, was used to enhance Davis's sentence to a mandatory minimum of 240 months' imprisonment. At trial, pursuant to Federal Rule of Evidence, 404(b) the government also used Davis's subsequent arrest in Indiana as evidence of his motive or intent to commit drug trafficking in Kansas.

Davis was convicted of various drug possession and distribution charges, and appeals three decisions of the district court. Davis argues the district court erred in (1) denying his motion to suppress the search of his car; (2) imposing an enhanced sentence because of improper notice of a prior conviction under 21 U.S.C. § 851; and (3) admitting evidence of his drug arrest in Indiana to prove motive or intent in violation of Rule 404(b). We conclude the district court did not err in finding reasonable suspicion justified the detention and that Davis's subsequent consent to the search was voluntary; the erroneous information in the government's notice of prior convictions did not prejudice Davis; and the evidence of another, similar crime was admissible to show motive or intent.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we AFFIRM.

## I. Background

Kansas state troopers stopped a rental car driven by Myron Wynn, in which Davis and Kericka Kirkland were passengers. After questioning Davis and Wynn separately, the troopers recognized they provided inconsistent statements regarding their travel plans and the rental car. Davis and Wynn also appeared abnormally nervous, and a criminal history check revealed Davis's prior record for dealing cocaine. The troopers issued a warning ticket to Wynn and requested consent to search the vehicle, which he refused. They requested consent from Davis, who initially refused, but later consented to the search. The troopers searched the vehicle and located a bag containing cocaine. They placed Davis, Wynn, and Kirkland under arrest. Davis filed a motion to suppress the evidence discovered during the search of the vehicle, arguing the troopers lacked reasonable suspicion to detain him beyond the time necessary to conduct a traffic stop and failed to obtain valid consent to search the vehicle. The district court held an evidentiary hearing and denied the motion.

Prior to trial, the government filed an information notifying Davis the government would seek an enhanced sentence upon his conviction based upon his two prior felony drug convictions in Indiana. However, one conviction occurred after Davis's arrest in this case and thus did not qualify as a prior conviction for enhancement. For the other prior conviction, which qualified for the sentencing enhancement, the government listed the incorrect case number. In his objections

to the presenting report and at his sentencing hearing, Davis objected to the adequacy of the notice in the information, but not based upon the erroneous case number. The district court rejected Davis's arguments and found the information was adequate to give Davis proper notice that he faced an enhanced sentence. Davis was sentenced to the statutory mandatory minimum of 240 months' imprisonment, which was to run concurrently with a forty-five year Indiana state sentence Davis was already serving.

Also prior to trial, Davis filed a motion in limine to exclude evidence the government planned to introduce at trial. The evidence was based on a drug related arrest that occurred in Indiana after the traffic stop and arrest in this case. In that case, Davis was found inside a house during the execution of a search warrant, holding the keys to a rental car that was later found to contain a bag of cocaine. The government offered the subsequent drug arrest as evidence of Davis's knowledge, intent, and lack of mistake or accident on the basis it would demonstrate Davis's subsequent cocaine possession in a rental car. Davis moved to exclude the evidence arguing the probative value of the evidence would be outweighed by substantial prejudice to Davis. The district court denied the motion and allowed the evidence under Rule 404(b) to show knowledge, intent, and lack of mistake or accident.

## II. Discussion

Davis raises a series of challenges to his trial and sentencing. He contends the district court erred by (1) denying his motion to suppress, (2) imposing a twenty-year mandatory minimum sentence pursuant to 21 U.S.C. § 851, and (3) admitting evidence of subsequent bad acts pursuant to Federal Rule of Evidence 404(b). We discuss each in turn.

### A. Motion to Suppress

Davis first argues the district court erred by denying his motion to suppress because the troopers (1) lacked reasonable suspicion to detain Davis beyond the scope and duration of the traffic stop, and (2) failed to obtain valid consent from Davis to search the vehicle.

When reviewing the denial of a motion to suppress, we accept the district court's factual findings unless clearly erroneous and view the evidence in the light most favorable to the government. *United States v. Gregoire*, 425 F.3d 872, 875 (10th Cir. 2005). We review *de novo* reasonableness under the Fourth Amendment. *Id.*

### 1. The Traffic Stop

In the morning of April 9, 2003, a Kansas Highway Patrol trooper stopped a rental car Davis was traveling in for speeding. The trooper spoke to the driver,

Myron Wynn, and warned him he was speeding and needed to slow down.[1]

Davis and Kericka Kirkland, another passenger, were seated in the front and back passenger seats, respectively. The trooper requested Wynn's driver's license and registration and questioned him about his travel itinerary. Wynn claimed he was coming from "Vegas." R., Vol. 3, Doc. 191 at 69. The trooper also requested identification from Davis and Kirkland as well as the rental agreement for the vehicle. He then returned to his patrol car.

Once back in the patrol car, the trooper radioed another officer, disclosing that he stopped a driver who appeared so nervous he was "ready to jump out of his pants." *Id*. at 84. The trooper also requested assistance at the traffic stop. He ran a criminal history check on Davis, Wynn, and Kirkland and waited for backup. After the second trooper arrived, the troopers discussed why Wynn would have rented a car in Los Angeles—as indicated on the car rental agreement—if he was coming from Las Vegas. The rental agreement stated the car was rented at 10 P.M. on April 7, 2003 at the Los Angeles International Airport (LAX) and was due to be returned on April 10, 2003 in Indianapolis, Indiana. The stop occurred around 7:45 A.M. on April 9, 2003, approximately thirty-six hours after the car was rented. The troopers recognized the inconsistency between the rental agreement and Wynn's statement. They decided

---

[1] An in-car video camera in the trooper's patrol car captured video of the traffic stop, and a microphone on the trooper's uniform captured his conversations.

to continue questioning Wynn as well as Davis because his name was on the rental agreement.

The trooper who initiated the stop again approached the vehicle, requested Wynn step out of the vehicle, and questioned him regarding his travel itinerary. Wynn replied all three had traveled from Indianapolis to Las Vegas, stayed there for approximately two days, and now were returning to Indianapolis. Wynn said they had driven a different rental car to Las Vegas, which was then stolen and required them to rent another vehicle. When asked if Las Vegas was the only city they had visited, Wynn replied Las Vegas was where they were gambling. Wynn then returned to the vehicle.

The trooper then asked Davis to exit the vehicle and questioned him in front of the patrol car about his travel itinerary and the car rental. Davis claimed they had driven out to California in a rental car Kirkland had rented from Budget in Indianapolis with another individual, Robert Day. Davis explained they had driven from Indianapolis to Harbor City, California, then back through Las Vegas, and their first rental car had been stolen in Harbor City. The trooper inquired where Davis had rented their current vehicle, and Davis stated he rented it somewhere in California. Davis hesitated to say exactly where he had rented the vehicle but finally claimed he rented it in Harbor City. The trooper then retrieved the rental car paperwork and showed Davis it listed the vehicle as rented at LAX. Davis explained he was confused between the airport and Harbor City because the

car was stolen in Harbor City and thus he had to rent a car at LAX. Davis appeared nervous and agitated during the questioning and several times corrected or modified his answers.

The trooper returned to his patrol car, where the second trooper had remained, and discussed the situation with him. They proceeded to look for "Arbor City" on a map of California and could not locate it. The trooper believed Davis had said he rented the car in "Arbor City" rather than "Harbor City." The second trooper located "Harbor City" on the map, which is in the southern part of Los Angeles and approximately fifteen miles south of LAX. During this time, dispatch reported to the troopers that Davis had a prior record for dealing cocaine.

The trooper issued a warning ticket to Wynn, returned the rental papers and documents collected from Wynn, Davis, and Kirkland, and told Wynn they were "free to go." R., Vol. 3, Doc. 191 at 29. He then asked Wynn if he had anything illegal in the vehicle and if he could search the vehicle. Wynn declined consent saying he was ready to leave. The trooper asked Davis if he had anything illegal in the vehicle, and Davis replied he did not. The trooper again said they were free to leave but requested to search the vehicle. Davis declined consent for the search.

Before Davis departed, the trooper requested a canine unit and decided the second trooper and he should pat down the passengers for weapons. Davis asked how long it would take for the canine unit to arrive. The trooper replied it would

arrive in approximately thirty minutes. Davis then asked how long it would take the troopers to search the vehicle by hand. The trooper informed him it would take five to ten minutes. Davis then consented to the search of the vehicle. Before initiating the search, the trooper inquired again to clarify and confirm Davis consented to the search. Davis repeated his consent. The troopers searched the vehicle, located a black bag containing cocaine, and placed Davis, Wynn, and Kirkland under arrest.

### 2. *Reasonable Suspicion*

Routine traffic stops are "governed by the principles developed for investigative detentions set forth in *Terry v. Ohio*." *United States v. Guerrero-Espinoza*, 462 F.3d 1302, 1307 (10th Cir. 2006). We conduct a two-step inquiry to assess the constitutionality of a traffic stop and determine (1) "whether the officer's action was justified at its inception," and, if so, (2) "whether the resulting detention was reasonably related in scope to the circumstances that justified the stop in the first place." *United States v. Valenzuela*, 494 F.3d 886, 888 (10th Cir. 2007). In this case, Davis does not challenge the validity of the initial traffic stop. Rather, he asserts the troopers lacked reasonable suspicion to detain him beyond the scope and duration of the traffic stop.

During a traffic stop, "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v.*

-9-

*Caballes*, 543 U.S. 405, 407 (2005).  At a stop an officer may "request a driver's license, registration, and other required papers, run requisite computer checks, and issue citations or warnings as appropriate."  *United States v. Rosborough*, 366 F.3d 1145, 1148 (10th Cir. 2004).  An officer may also question the driver "about matters both related and unrelated to the purpose of the stop, as long as those questions do not prolong the length of the detention."  *United States v. Karam*, 496 F.3d 1157, 1161 (10th Cir. 2007).

Once an officer has returned the driver's documents "further questioning amounts to an unlawful detention only if the driver has objectively reasonable cause to believe that he is not free to leave."  *United States v. Chavira*, 467 F.3d 1286, 1290 (10th Cir. 2006).  Factors that may support a driver's reasonable belief include "the presence of more than one officer, the display of a weapon, the physical touching of the detainee, the officer's use of a commanding tone of voice, and the officer's use of intimidating body language."  *Id.*  "An officer is not required to inform a suspect that she does not have to respond to his questioning or that she is free to leave."  *United States v. Bradford*, 423 F.3d 1149, 1158 (10th Cir. 2005).

But an officer may detain a driver beyond the scope of the traffic stop if, during the stop, "(1) the officer develops an objectively reasonable and articulable suspicion that the driver is engaged in some illegal activity, or (2) the initial detention becomes a consensual encounter."  *Rosborough*, 366 F.3d at 1148

-10-

(quotation and alterations omitted). To determine whether an officer has a reasonable suspicion to detain beyond the scope of the traffic stop, we "must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quotations omitted). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id.* (quotation omitted). While reasonable suspicion cannot be based upon a "mere hunch," it also "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id*. at 274.

Our cases have identified a number of factors that may contribute to an officer's reasonable suspicion of illegal activity justifying detention. One factor is an individual's internally inconsistent statements or the inconsistencies between a passenger and driver's statements regarding travel plans. *See United States v. Simpson*, 609 F.3d 1140, 1148 (10th Cir. 2010) ("Implausible travel plans can contribute to reasonable suspicion."); *United States v. White*, 584 F.3d 935, 951 (10th Cir. 2009) ("We have noted numerous times that implausible travel plans can form a basis for reasonable suspicion."); *United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir. 1998) ("Among those factors that have justified further

questioning are . . . inconsistent statements about destination."); *United States v. Kopp*, 45 F.3d 1450, 1454 (10th Cir. 1995) (finding reasonable suspicion justified continued detention because driver's explanation of travel plans were neither plausible nor consistent with the passenger's explanation, and the passenger's responses to questions were internally inconsistent).

An individual's nervousness during a traffic stop is another fact that may contribute marginally to a reasonable suspicion of illegal activity. Our cases acknowledge if during a traffic stop for a routine violation an individual "shows unusual signs of nervousness, this may be considered as part of the totality of circumstances a reasonable law enforcement officer would analyze in investigating possible crimes." *United States v. Santos*, 403 F.3d 1120, 1127 (10th Cir. 2005). However, nervousness is a common, natural reaction during a traffic stop, and thus "[o]nly extraordinary and prolonged nervousness can weigh significantly in the assessment of reasonable suspicion." *Id.*

A previous criminal history may also weigh in favor of an officer's reasonable suspicion of illegal activity. An individual's criminal record, by itself, is not a sufficient basis for reasonable suspicion. *See id.* at 1132 ("Even people with prior convictions retain Fourth Amendment rights; they are not roving targets for warrantless searches."). But, again, criminal history "is one factor that may justify further detention and that may cast a suspicious light on other seemingly innocent behavior." *Simpson*, 609 F.3d at 1147; *see also Santos*, 403

-12-

F.3d at 1132 ("[I]n conjunction with other factors, criminal history contributes powerfully to the reasonable suspicion calculus.").

Finally, our cases note drug traffickers often use rental vehicles to transport narcotics. *See United States v. Contreras*, 506 F.3d 1031, 1036 (10th Cir. 2007) (examining the basis for reasonable suspicion and "credit[ing] the idea that drug couriers often use third-party rental cars."); *United States v. Williams*, 271 F.3d 1262, 1270 (10th Cir. 2001) ("The officer knew from his training and experience that drug couriers often use third-party rental cars.").

Applying these principles to the facts here, we conclude the troopers had reasonable suspicion to detain Davis for the purpose of a canine sniff.

The troopers' reasonable suspicion of illegal activity was based upon Davis's and Wynn's inconsistent travel plans, their abnormal nervousness, and Davis's criminal history. First, when questioned, Davis and Wynn provided conflicting accounts of their travel plans and the origin of the rental car. Wynn claimed they were coming from Las Vegas, but the car rental agreement showed it was rented in Los Angeles. Davis stated he rented the car in Harbor City, but the rental car agreement listed the car as rented at LAX. Davis's and Wynn's explanations of their travel plans were inconsistent with each other and conflicted with the rental car paperwork.

Additionally, Davis and Wynn were abnormally nervous when questioned during the traffic stop. After his initial conversation with Wynn, the trooper

-13-

radioed to the second trooper and commented that Wynn "was about to jump out of his pants, he was so nervous." R., Vol. 3, Doc. 191 at 84. The trooper testified at the suppression hearing that "Mr. Wynn was so nervous that he was just shaking so bad, he was really, really nervous." *Id.* at 13.

Davis appeared agitated and nervous when questioned about the location of the car rental. We agree with the district court's assessment that during his conversation with the trooper, Davis was "overreacting . . . about where they had been" and "seemed to want to jump into the conversation and respond to questions even before the question had been asked." *Id.* at 85. Both Davis and Wynn exhibited prolonged and extraordinary nervousness during the traffic stop.

Next, during the criminal history check, the trooper learned Davis had a prior history of drug-trafficking. In addition to the inconsistent travel plans and abnormal nervousness, Davis's criminal history contributed to the reasonable suspicion of illegal activity, especially for the limited purpose of a canine sniff of the vehicle, or at worst, a brief additional detention to ask for consent.[2]

We find these factors, collectively, supported the troopers' reasonable suspicion Davis was involved in illegal activity and permitted the detention of Davis beyond the scope and duration of the traffic stop.

---

[2] Although not mentioned by the district court, the fact the car was rented could contribute to the totality of circumstances that it may be involved in drug-trafficking.

### 3. *Consent to Search the Car*

Davis also contends the district court clearly erred by finding he voluntarily consented to the search of the car.

"[T]he Fourth Amendment unquestionably prohibits the search of a vehicle's interior unless law enforcement officials receive consent, have a warrant, or otherwise establish probable cause to support the search." *United States v. Forbes*, 528 F.3d 1273, 1277–78 (10th Cir. 2008). We have held "a vehicle may be searched if a person in control of the vehicle has given his voluntary consent to the search." *United States v. Zubia-Melendez*, 263 F.3d 1155, 1162 (10th Cir. 2001).

Whether consent is voluntary is "determined by the totality of the circumstances and reviewed for clear error." *Id.* We apply a two-part test: (1) "the government must proffer clear and positive testimony that consent was unequivocal and specific and freely given," and (2) "the government must prove that this consent was given without implied or express duress or coercion." *Id.* (quotation omitted). Additionally, an individual may voluntarily consent to a search even though he is detained. *See United States v. Dozal*, 173 F.3d 787, 796 (10th Cir. 1999) ("Supreme Court and Tenth Circuit precedent establishes that consent to search may be voluntary even though the consenting party is being detained at the time consent is given.") (brackets and quotations omitted).

-15-

Based on the record here, we conclude the district court did not clearly err in finding Davis provided voluntary consent to search the vehicle. Initially, Davis refused consent to search the vehicle. The trooper requested a canine unit and Davis had the option of waiting for the canine unit to arrive or consenting to a search of the vehicle. After Davis asked how long it would take for the canine unit to arrive compared with consenting to a search, he consented to a search of the vehicle. Even after receiving consent, the trooper inquired to confirm Davis was in fact consenting to a search of the vehicle, and Davis confirmed his consent.

In these circumstances, the district court did not clearly err in finding Davis's consent was voluntary and not obtained through coercion or force.

**B. 21 U.S.C. § 851 Information of Prior Convictions**

Next, Davis argues the district court erred by imposing a twenty-year mandatory minimum sentence pursuant to 21 U.S.C. § 851 because the government failed to give him adequate notice of the prior conviction it intended to use for an enhanced sentence. He contends he was given the wrong case number for the qualifying conviction in its Information of Prior Convictions and therefore lacked proper notice of the prior conviction. We reject this argument.

"We review de novo the legality of a sentence, including the adequacy of an information filed under 21 U.S.C. § 851." *United States v. Hood*, 615 F.3d 1293, 1302 (10th Cir. 2010). Ordinarily, we conduct a harmless error analysis of

non-clerical errors in an information. *Id.* ("Even if we were to conclude that the error in the Enhancement Information was more than a correctable clerical error (i.e., non-clerical), we still would be free to conclude that such an error was harmless."). But in district court, Davis failed to object to the information based upon the incorrect case number, and thus we review his sentence for plain error. *See* FED. R. CRIM. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

Under plain error review,

> [B]efore an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*United States v. Balderama-Iribe*, 490 F.3d 1199, 1203–04 (10th Cir. 2007). Davis bears the burden of demonstrating plain error. *Id.*

### 1. *The Government's Information of Prior Convictions*

The day before Davis's jury trial began, the government filed an Information of Prior Convictions pursuant to 21 U.S.C. § 851 to notify Davis that, in the event he was convicted, it would seek a sentence of up to life imprisonment. The information listed two prior qualifying convictions for "Andre Davis":

a. In the State of Indiana, Superior Criminal Court, Cause No. 49G049012CF14678, the defendant was convicted of dealing in cocaine or narcotics and possession of cocaine; and
b. In the State of Indiana, Superior Criminal Court, Cause No. 49G200402FA018946 the defendant was convicted of dealing in cocaine and possession of cocaine.

R., Vol. 1, Doc. 119 at 2. The second noticed conviction, 49G200402FA018946, did not qualify as a prior conviction because it occurred in 2004, after Davis's criminal conduct in this case. Thus, the only qualifying conviction listed in the information was the first noticed conviction, 49G049012CF14678. The problem with this notice is that the case number referenced a crime committed by "Andre Davis," but not the Andre Davis on trial in this case.

The case went to trial and Davis was convicted. But as the government now concedes, the case number in the information for this prior conviction was incorrect and identified a crime committed by a different Andre Davis.

After trial and before sentencing, the government prepared a Presentence Investigation Report (PSR). The PSR contained the correct case number, 49G059101CF005385, for Davis's prior conviction for dealing cocaine in Indiana.[3] In his objections to the PSR, Davis "d[id] not contest that he was convicted of Dealing in Cocaine in 1993 for a 1991 offense," but he challenged its use for enhancement of his sentence because he asserted the matter was still under post-conviction review in Indiana. R., Vol. 1, Doc. 161 at 1. At his

_____

[3] The PSR also listed the 2004 conviction for dealing cocaine and possession of cocaine with the proper case number.

-18-

sentencing hearing, Davis's counsel again did not contest Davis was convicted in 1993 for a 1991 offense. His counsel also acknowledged his argument regarding post-conviction relief was related to a 2004 case, which the government did not rely upon for enhancement.

At the sentencing hearing, Davis's counsel objected to the adequacy of the § 851 information on the basis it specified two prior convictions that would be used to enhance Davis's minimum possible sentence to life imprisonment. Counsel noted only one of the convictions was a qualifying prior conviction, which would enhance his minimum possible sentence to only twenty years. He argued Davis never received proper notice under § 851 that he was facing only the lesser twenty-year minimum sentence, based upon one prior conviction, rather than life imprisonment, based upon two prior convictions.

### 2. 21 U.S.C. § 851 Information

Davis contends the incorrect information cannot be used to enhance his sentence. Under § 851:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. . . . Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence.

21 U.S.C. § 851(a)(1). A district court may not impose an enhanced sentence based on a defendant's prior conviction unless the government files an information in compliance with § 851(a).[4] *United States v. LaBonte*, 520 U.S. 751, 754 n.1, 759–60 (1997).

Due process requires a defendant "receive reasonable notice and opportunity to be heard relative to the recidivist charge even if due process does not require that notice be given prior to trial on the substantive offense." *United States v. Gonzales-Lerma*, 14 F.3d 1479, 1485 (10th Cir. 1994) (quoting *Oyler v. Boyles*, 368 U.S. 448, 452 (1962)), *overruled on other grounds by United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995). Congress enacted § 851 in order to fulfill this due process requirement, but did not "specify the particular form which notice of enhancement must take." *Id.* The information of prior convictions is intended to provide a defendant "an opportunity to establish either that he had not been convicted of the crimes the government relies upon for the sentence enhancement or that the convictions do not qualify as the type satisfying the enhancement requirements." *United States v. Willis*, 102 F.3d 1078, 1085 (10th Cir. 1996).

---

[4] Failure to file an information under § 851 does not deprive the district court of jurisdiction to impose a sentence. *See* Aplt.'s Br. at 23. In *United States v. Flowers*, we clarified that "[s]ection 851(a)(1) directs the district court in imposing a sentence, but it does not limit the district court's jurisdiction over sentencing." 464 F.3d 1127, 1130 (10th Cir. 2006). Thus, in *Flowers*, we "expressly overrule[d] our previous decisions that have improperly designated § 851(a)'s requirements as jurisdictional." *Id.*

The notice supplied to Davis contained incorrect information. But errors in an information regarding a prior conviction do not necessarily render the information defective under § 851. Clerical errors simply may be corrected pursuant to § 851(a)(1). 21 U.S.C. § 851(a)(1) ("Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence."). Even a non-clerical error is not automatically fatal to an information, but "we nonetheless may conduct an inquiry into whether any such error was prejudicial." *Hood*, 615 F.3d at 1303. An information is defective under § 851 when a defendant suffers prejudice that deprives him of the notice and opportunity to challenge a prior conviction that is subsequently used to enhance his sentence.

We have previously considered errors in a § 851 information. In one instructive example, we reviewed an information containing the correct offense and location, but the incorrect date of conviction. *Gonzales-Lerma*, 14 F.3d at 1485. In that case, the defendant objected to the information because it contained the incorrect date, failed to include a case number, and did not specify the place of conviction other than the state. We held the incorrect date of conviction was a "clerical mistake" that could be corrected pursuant to § 851(a)(1). *Id.* at 1486. But we also concluded the information provided sufficient notice to the defendant regarding his prior conviction even without the case number and specific place of conviction. *Id.* That was true especially where defense counsel had been "invited

. . . to explore the contents of the judgment" and the defendant had not challenged the conviction but rather the timing and specificity of the information. *Id.*

Recently, in *United States v. Hood*, we considered an information listing the incorrect court and location of conviction. 615 F.3d at 1297. Despite these errors, and even if non-clerical, the information contained other, correct identifying information such as the proper case number. The defendant had received a copy of both the relevant police report for the conviction and the PSR recounting defendant's criminal history. In his objections to the PSR, the defendant admitted actual knowledge of a conviction associated with his name that had the correct court and location as well as the same details as those found in the information. At the sentencing hearing, defense counsel expressly declined to object on the grounds the defendant was not the person subject to the conviction listed in the information. We concluded the defendant "had sufficient notice of the prior conviction upon which the government sought enhancement as well as an opportunity to be heard" and the errors in the information "would be at most harmless error." *Id.* at 1304.

Based on these cases, the government's information supplied in this case provided adequate notice, if barely. The incorrect case number might have been misleading because it directed Davis to a conviction of a different Andre Davis rather than merely omitting identifying information. But Davis never contested the information on this ground. While we do not condone the information here,

Davis still must demonstrate he suffered prejudice as a result of the error. This he cannot do, for several reasons.

First, Davis received notice he faced a sentencing enhancement based upon his prior 1993 drug conviction and had the opportunity to challenge this prior conviction in the district court before sentencing. Davis concedes, of course, that he committed a drug offense in Indiana in 1991. In fact, in Davis's second objections to the PSR he stated he would not contest that he was convicted in Indiana in 1993 for a 1991 drug offense. At the sentencing hearing, moreover, Davis's counsel admitted his objection to the convictions was on the grounds one of them was on post-conviction review in Indiana, which related to Davis's 2004 conviction and not the 1993 conviction. These statements demonstrate that, at the time Davis filed his sentencing objections, he "was aware of facts that would have allowed him to reasonably infer that the conviction of which he had knowledge was the same conviction listed in the [information], notwithstanding its flawed description there." *Hood*, 615 F.3d at 1303.

Additionally, Davis had four separate opportunities to object to the sufficiency of the notice of the conviction: (1) when the information was filed, (2) in Davis's first objections to the PSR, (3) in Davis's second objections to the PSR, and (4) at the sentencing hearing. Yet, at each point he failed to object because of the incorrect case number.

-23-

During the sentencing hearing Davis did object to the government's information on the grounds notice in the information was deficient, but *not* based upon the incorrect case number. Davis objected on the grounds the information stated he was subject to a mandatory life sentence when, in fact, he was only subject to a mandatory twenty-year sentence. The district court overruled this objection finding the information placed Davis on notice that he faced an enhanced sentence.

For these reasons, we find Davis has not overcome the hurdles of plain error review. Even if we assumed error which was plain, he cannot show prejudice because of the error in the government's information or that it is likely he would have received a different sentence if the error had been pointed out to the district court.

### C. Rule 404(b) Evidence

Davis's final argument is the district court erred when it admitted evidence of Davis's drug arrest in Indiana pursuant to Federal Rule of Evidence 404(b) because it was not given for a proper purpose and the evidence's prejudice outweighed its probative value.

We review a district court's admission of evidence under Rule 404(b) for an abuse of discretion. *United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2006). We will not reverse the district court if its decision "falls within the

bounds of permissible choice in the circumstances and is not arbitrary, capricious or whimsical." *Id.* (quotations and alteration omitted).

### 1. *Davis's Indiana Arrest*

In February 2004, Davis was arrested in Indiana for cocaine possession. At the time of the arrest, Davis was found in a house during the execution of a search warrant, and in his pocket were keys to a Budget Rental car and $5,811 cash. The rental car contained a canvas bag containing just under 500 grams of cocaine. In Davis's wallet, the police found two Budget Rental car receipts. One was for a car rented in the name of Eddy L. Scott. The other was for a car rented in the name of Robert Day and listed Davis's co-defendant in this case, Kericka Kirkland, as an additional driver. This second receipt was for the rental car—referenced during the traffic stop in this case—which Davis had claimed was driven out to California and stolen in Harbor City.

### 2. *Rule 404(b)*

Federal Rule of Evidence 404(b) provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of . . . intent, . . . plan, knowledge, . . . or absence of mistake.

FED. R. EVID. 404(b). We consider a four-factor test when determining the admissibility of evidence under Rule 404(b). The test requires that:

(1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to FED. R. EVID. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

*United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000) (quotation omitted); *see Huddleston v. United States*, 485 U.S. 681, 691–92 (1988) (discussing four sources that serve as "the protection against . . . unfair prejudice" when admitting evidence under Rule 404(b)); *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000) ("To determine whether Rule 404(b) evidence was properly admitted we look to the four-part test set out by the Supreme Court in *Huddleston v. United States*.").

Rule 404(b) admissibility is a permissive standard and "if the other act evidence is relevant and tends to prove a material fact other than the defendant's criminal disposition, it is offered for a proper purpose under Rule 404(b) and may be excluded only under Rule 403." *United States v. Parker*, 553 F.3d 1309, 1314 (10th Cir. 2009) (quotation omitted). Evidence is offered for a proper purpose if it is utilized for any of the "other purposes" enumerated in Rule 404(b). Relevant evidence tends to make a necessary element of an offense more or less probable. *See* FED. R. EVID. 401. The balancing test in Rule 403 determines whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *See United States v. Burgess*, 576 F.3d 1078, 1099 (10th Cir.

2009) ("To be inadmissible under rule 403, evidence must do more than damage the Defendant's position at trial, it must make a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocense [*sic*] of the crime charged.") (quotations omitted). A limiting instruction cautions the jury that the Rule 404(b) evidence should be considered only for the purposes for which it was admitted and not as evidence of the defendant's character or propensity to commit an offense.

Evidence admitted under Rule 404(b) may relate to conduct occurring either *before or after* the charged offense. We have consistently "recognized the probative value of uncharged acts to show motive, intent, and knowledge, whether the acts involved previous conduct or conduct subsequent to the charged offense, as long as the uncharged acts are similar to the charged crime and sufficiently close in time." *Zamora*, 222 F.3d at 762; *see Mares*, 441 F.3d at 1157 ("It is settled in the Tenth Circuit that evidence of 'other crimes, wrongs, or acts' may arise from conduct that occurs *after* the charged offense.") (emphasis in original).

Similarity between subsequent conduct and the charged offense is demonstrated through "physical similarity of the acts or through the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses." *Zamora*, 222 F.3d at 762 (quotation omitted). We have identified several non-exclusive factors to consider when

assessing similarity: "(1) whether the acts occurred closely in time; (2) geographical proximity; (3) whether the charged offense and the other acts share similar physical elements; and (4) whether the charged offense and the other acts are part of a common scheme." *Mares*, 441 F.3d at 1158 (citations omitted).

Applying these principles here, we find the district court properly admitted the evidence under Rule 404(b).

Davis argues the evidence should not have been admitted for three reasons: the government did not articulate the specific purpose for admission, the evidence was prejudicial, and there was no contemporaneous limiting instruction.[5] In turn, the government contends the evidence was offered for three of the purposes enumerated in Rule 404(b): (1) Davis's intent to distribute cocaine found in a car rented by someone else with two additional passengers, (2) his knowledge of

---

[5] Davis also argues the government failed to give proper notice of its intent to use Rule 404(b) evidence at trial. The district court's general scheduling order specified the government shall disclose this information 30 days prior to trial. Davis asserts no disclosure was made until the day of trial during a hearing on Davis's motion *in limine* to exclude Rule 404(b) evidence. The government did not address this issue in its briefing to this court. However, as Davis acknowledges, no objection was made before the district court regarding notice, and the district court held a hearing to determine whether the Rule 404(b) evidence should be allowed at trial. Also, it appears the information regarding the Rule 404(b) evidence was available at the U.S. Attorney's office for Davis's counsel to review, but he did not avail himself of this opportunity. Because this issue was not raised before the district court and Davis had an opportunity to be heard on the issue during the hearing on his motion *in limine*, we find the district court did not err in admitting the Rule 404(b) evidence even if the government failed to comply with the notice requirements of the district court's general scheduling order.

cocaine found in a bag in a rental car, and (3) the cocaine's presence was not due to an accident or mistake. The government also argues the evidence's probative value was not substantially outweighed by any prejudice and Davis never requested a contemporaneous limiting instruction.

The first factor when considering the admissibility of Rule 404(b) evidence —proper purpose—is met here. At trial, Davis argued the bag containing cocaine found in the vehicle should not be connected to him because there was nothing to indicate the bag belonged to him. He also argued he had no knowledge of the bag's contents and had no knowledge of a drug conspiracy. The Rule 404(b) evidence tends to show Davis knowingly participated in a drug conspiracy and the cocaine's presence in the vehicle was not a result of a mistake or accident.

The second factor—relevance—is also met because the subsequent act is similar to the crime charged in this case. Davis was arrested in Indiana with keys to a rental car, which was rented in another person's name and contained a bag of cocaine. The Rule 404(b) evidence tends to show it was more likely than not, in this case, (1) Davis knew cocaine was in the bag, (2) the bag's presence was no mistake or accident, and (3) Davis was a member of the drug conspiracy that transported cocaine in rental cars. Also, the subsequent act occurred only 14 months after the arrest in this case.

The third factor requires us to determine whether the danger of unfair prejudice from the evidence substantially outweighed its probative value. By

definition, any evidence that would undermine Davis's defense is prejudicial. But we find no reason that any danger of unfair prejudice created by the evidence substantially outweighed its probative value, nor has Davis provided one.

The final factor provides a limiting instruction should be given to the jury regarding the 404(b) evidence upon defendant's request. Davis did not request a contemporaneous limiting instruction, but did propose a limiting instruction that the district court included in its instructions to the jury before closing arguments. The limiting instruction explained to the jury the Rule 404(b) evidence should be considered only as it relates to Davis's intent, knowledge, and absence of mistake or accident. The court instructed that, though Davis may have committed a subsequent act similar to that charged, it did not mean he necessarily committed the act charged in the case.

In sum, the district court did not abuse its discretion and properly admitted the evidence under Rule 404(b).

### III. Conclusion

For the foregoing reasons, we AFFIRM Davis's conviction and sentence.