**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 1, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOHNNY LEE SUMMERS,

    Defendant - Appellant.

No. 24-5030

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:22-CR-00165-EFM-1)**

_____

Kristin M. Kimmelman, Assistant Federal Public Defender (Maureen Scott Franco, Federal Public Defender, with her on the briefs), Office of Federal Public Defender, Western District of Texas, San Antonio, Texas, for Defendant-Appellant.

Steven J. Briden, Assistant United States Attorney (Clinton J. Johnson, United States Attorney, with him on the brief), Office of United States Attorney, Northern District of Oklahoma, Tulsa, Oklahoma, for Plaintiff-Appellee.

_____

Before **TYMKOVICH**, **PHILLIPS**, and **MORITZ**, Circuit Judges.

_____

**TYMKOVICH**, Circuit Judge.

_____

Johnny Lee Summers was indicted on various charges of possession of child

pornography and sexual abuse of a minor.  Prior to trial, the government filed a

notice of intent to introduce evidence that Summers solicited and transmitted child

pornography several years earlier under Federal Rule of Evidence 404(b), which allows prior conduct to be admitted for limited purposes. The district court ruled that the evidence of his prior acts was admissible under Rule 404(b), and after a jury trial, Summers was found guilty of several counts relating to coercion and enticement and child sex offenses. He was sentenced to 340 months of imprisonment.

Summers appeals his conviction, arguing the district court abused its discretion by admitting extrinsic evidence of his prior conduct during his trial. He contends the evidence was not admitted for a proper purpose and its probative weight was substantially outweighed by unfair prejudice. He also argues the district court's limiting instruction failed to restrict the Rule 404(b) evidence to its proper purpose.

We **AFFIRM**. Evidence of Summers' prior conduct was: (1) substantially similar to the charged conduct and was probative to show Summers' identity, intent, motive, and plan for the charged offenses; and (2) not substantially prejudicial to warrant exclusion under Rule 403. Any concern as to unfair prejudice was alleviated by the court's limiting instruction to the jury.

## I.    Background[1]

### A.    Summers' 2018 Conduct

In 2018, Summers met and entered a relationship with M. Miller, who was 16 or 17 years old at the time. Summers was two years older than Miller. Miller had a

---

[1] The record is sealed in this matter and thus we recite only the factual background as relevant in resolving the issues on appeal.

2

sister, M.M., who was 10 years old at the time. Summers would visit the sisters at their mother's house every other weekend.

Summers and Miller spoke every day through Snapchat or other messaging platforms. After some time, Summers began requesting Miller to send nude photos and videos of herself and M.M and sent explicit instructions asking the sisters to engage in sexual acts with each other. He also sent nude photos of himself, including his genitals. Miller testified that she sent nude photos of herself and M.M. to Summers based on his request. Eventually, Miller's parents found out about the relationship and the sexually inappropriate messages. They reported Summers to local law enforcement and turned over Miller's phone as evidence.

Law enforcement investigated the matter and interviewed the sisters and Summers. During a post-*Miranda* interview, Summers acknowledged that he dated Miller for a few months, but denied sending pictures of his genitals or asking for nude photographs of M.M. He stated that he and Miller had a minimally physical relationship and never had sex. When confronted with data extracted from Miller's phone, Summers stated that he forgot and could not recall sending the photos. Summers also posited that he did not use his Snapchat account during the time the messages were sent and stated his Snapchat account could have been hacked. Summers claimed Miller's father set him up.

In December 2018, Summers was indicted by the State of Oklahoma for charges including: (1) Prepare/Distribute/Exhibit Obscene Material, Lewd or Indecent Proposals to a Child Under 16 (as to M.M.); and (2) Use of Computer to

3

Commit Crime.  Summers pleaded guilty to the latter and received a five-year suspended sentence.

### B.     Summers' 2021 Conduct

Three years later, Summers began dating N. Hogue, who was 17 years old at the time; Summers is five years older than Hogue.  Hogue has a younger sister, J.H., who was 14 years old at the time.  J.H. spent time with Summers and Hogue, and the three of them used Snapchat to communicate with each other.  Eventually, Summers and Hogue moved into an extended-stay motel room together, the same motel where J.H. lived with her parents.

Over time, the Snapchat messages from Summers to J.H. became sexual in nature.  Summers sent J.H. photos of his genitals, requested her to send him nude photos and have sex with him, and asked if he could "study her body."  During one of J.H.'s visits to Summers' motel room, Summers took J.H. to the bathroom and lifted her shirt and touched her breasts.  And on multiple occasions, Summers took J.H. to the bathroom and touched her bare genitals with his fingers.  His behavior soon escalated.  During one of J.H.'s visits, Summers undressed J.H. and attempted to vaginally penetrate her with his penis in the bathroom.  Hogue, however, walked into the bathroom during this encounter.  Hogue left the bathroom, but not before observing J.H. without her pants on and Summers with his pants unzipped.  J.H. told Summers to stop when he attempted to insert his penis into her again.  Summers continued to send sexual messages to J.H., which memorialized the events that

4

occurred in the bathroom. Summers also requested that they engage in sex until J.H. began dating someone else.

Eventually, J.H. told her parents about Summers and his messages, and they informed the police. In January 2022, Summers engaged in a post-*Miranda* interview with law enforcement. He initially denied knowing J.H. or her age, and denied sending her any Snapchat messages. He stated he had not used the platform for the last three years because of the conditions of his probation from the 2018 offenses. Later in the interview, Summers admitted that he had messaged J.H. on Snapchat but claimed that his account was hacked into during the time the nude photos were requested—he asserted that Hogue's stepfather fabricated the messages to frame him. Summers denied having a sexual relationship with J.H., stating that he did not reciprocate J.H.'s flirting, although he later added that he may have accidentally touched her breast. And notably, Summers informed law enforcement that he had previously been accused of similar conduct before they informed him of accusations.

Law enforcement executed a search warrant for the Snapchat accounts of Summers, Hogue, and J.H. Over 3,000 messages were recovered between Summers and J.H. and there were three videos depicting Summers and Hogue engaging in oral and vaginal sex.

### C.    *Government's Notice of Intent Pursuant to Rule 404(b)*

A superseding indictment charged Summers with production of child pornography (Counts 1–3); coercion and enticement of a minor (Count 4); sexual abuse of a minor in Indian Country (Count 5); and abusive sexual contact with a

minor in Indian Country (Count 6). Counts 1 to 3 pertained to Summers' conduct with Hogue, while Counts 4 to 6 related to Summers' conduct with J.H.

Noting the significant similarities between Summers' charged offense and his earlier 2018 relationship with Miller and M.M., the government filed a pretrial motion to introduce evidence of Summers' 2018 conduct under Rule 404(b). Specifically, the government sought to introduce evidence of Summers' solicitation of the sisters for child pornography, his requests for sexual favors from M.M., and his interview with law enforcement to demonstrate Summers' intent, plan, and motive— it would not offer evidence of the felony conviction. The government suggested that Summers' actions were parallel in both instances. For example, Summers (1) requested and/or created child pornography from his then-girlfriend, a minor; (2) sent sexual messages and nude photographs to his then-girlfriend's younger sister via Snapchat; (3) requested the younger sister to send nude photographs and engage in sexual acts; and (4) when interviewed by law enforcement, claimed he did not send those messages and stated his Snapchat account was hacked. Defense counsel, on the other hand, argued the evidence had no proper purpose, there was substantial danger of unfair prejudice, and the evidence was improperly being used to show propensity.

At the pretrial conference, the district court determined the Rule 404(b) evidence was admissible and probative because it was properly offered to show not only Summers' intent, plan, and motive, but also his identity. The court noted, however, that there should be steps to limit the prejudicial effect of the evidence per Rule 403, such as by excluding explicit photos, limiting testimony and questions to

6

the purposes under Rule 404(b), and providing an appropriate limiting instruction to the jury.

### D.    *Summers' Trial and Sentencing*

The three-day jury trial included testimony from J.H., Hogue, Miller, M.M., and law enforcement officers.  Defense counsel renewed his objection to the government's Rule 404(b) evidence, but was overruled.

Summers testified on his own behalf and denied his guilt.  He maintained he did not create the Snapchat account that sent those messages, nor did he send any messages from it.  He testified that he did not have a Snapchat account, that he never sent any photos or videos to J.H, and further denied ever being in a bathroom alone with J.H. despite stating otherwise in his earlier interview with law enforcement.  Summers explained that his statements at trial were inconsistent with what he told law enforcement because he did not like talking to the police.

Prior to closing arguments, the court circulated proposed jury instructions to the parties to review overnight.  The next day, the parties agreed on the jury instructions, including the instruction on similar acts pursuant to Rule 404(b) (Jury Instruction 12).  The court instructed the jury accordingly.

Ultimately, the jury found Summers guilty of the charges involving J.H. (Counts 4–6) but acquitted him of charges involving Hogue (Counts 1–3).  Summers was sentenced to 340 months on Count 4, 180 months on Count 5, and 24 months on Count 6, all to run concurrently.

## II.    Discussion

Summers argues the district court erred by admitting extrinsic evidence of Summers' 2018 conduct with minors.  As we explain, the district court did not abuse its discretion.

### A.    *Standard of Review*

"We review a district court's admission of evidence under Rule 404(b) for an abuse of discretion.  We will not reverse the district court if its decision 'falls within the bounds of permissible choice in the circumstances and is not arbitrary, capricious or whimsical.'"  *United States v. Davis*, 636 F.3d 1281, 1297 (10th Cir. 2011) (quoting *United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2006)) (cleaned up).

### B.    *Federal Rule of Evidence 404(b)*

Federal Rule of Evidence 404 provides:

> Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

FED. R. EVID. 404(b).  "Rule 404(b) admissibility is a permissive standard and 'if the other act evidence is relevant and tends to prove a material fact other than the defendant's criminal disposition, it is offered for a proper purpose under Rule 404(b) and may be excluded only under Rule 403.'"  *Davis*, 636 F.3d at 1298 (quoting *United States v. Parker*, 553 F.3d 1309, 1314 (10th Cir. 2009)).

8

We consider four factors—the *Huddleston* factors—when determining the admissibility of evidence under Rule 404(b): "(1) whether the evidence is offered for a proper purpose, (2) its relevancy, (3) that the probative value of the evidence is not substantially outweighed by its prejudicial effect, and (4) a limiting instruction is given if the defendant so requests." *Mares*, 441 F.3d at 1156 (first citing *Huddleston v. United States*, 485 U.S. 681, 691 (1988); and then citing *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000)).

### C.     Application

Summers argues evidence of his 2018 conduct failed to satisfy the *Huddleston* factors and thus should not have been admitted in his 2021 trial.  We consider each in turn.

#### 1.     Proper Purpose

First, Summers argues the Rule 404(b) evidence was provided only to prove that he was likely to act in conformity with a particular trait because he had engaged in similar conduct before.  Aplt. Br. 27.  As a general matter, evidence of propensity to act in a certain way is not admissible.  *United States v. Moran*, 503 F.3d 1135, 1143 (10th Cir. 2007).  A defendant must be convicted for the charged conduct, not for conduct committed in the past.  But Rule 404(b) provides an exception to the general rule.

"Evidence is admitted for a proper purpose if allowed for one or more of the enumerated purposes in Rule 404(b)." *Mares*, 441 F.3d at 1156–57.  In seeking to admit evidence of other acts, "the government must precisely articulate the purpose

9

of the proffered [Rule 404(b)] evidence." *United States v. Kearn*, 863 F.3d 1299, 1309 (10th Cir. 2017) (quoting *United States v. Birch*, 39 F.3d 1089, 1093 (10th Cir. 1994)); *see* FED. R. EVID. 404(b)(3). The trial court must then "specifically identify the purpose for which such evidence is offered." *Birch*, 39 F.3d at 1093 (quoting *United States v. Kendall*, 766 F.2d 1426, 1436 (10th Cir. 1985)) ("[A] broad statement merely invoking or restating Rule 404(b) will not suffice.").

We find the government properly articulated with precision the evidentiary purposes of the Rule 404(b) evidence it offered. The government's notice of intent provided that the evidence would be used to help prove Summers' intent, plan, and motive, such as that Summers "has a common pattern and practice that revolves around his sexual interest in children." Vol. II, 22. Specifically, the notice stated that Summers would date an older teenage girl with a younger sister, would show "sexual interest in the older sister, including through requests for child pornography," and thus "gain[] access to and cultivat[e] a relationship with the younger sister." *Id.* And when confronted by law enforcement, Summers would deny his inculpatory acts and claim his Snapchat account was hacked. *Id.* The government asserted Summers' common plan and motive allowed Summers to gratify his sexual interest in children (*i.e.*, his intent).

We also find the district court appropriately specified the purposes for which the Rule 404(b) evidence was to be offered at trial—identity, intent, plan, and motive. To begin, we agree with the court's findings that Summers' 2018 conduct and 2021 conduct share the same signature quality and could be used to prove

10

Summers' plan. Indeed, evidence of Summers' 2018 conduct demonstrates he may have had a similar plan to show sexual interest in an older sister and then gain access to a younger sister. In both instances, sexual messages were sent through Snapchat, Summers requested and sent nude photographs to minor-victims through Snapchat, and the relationship was terminated only when the minor-victims' parents reported Summers. And both in 2018 and in 2021, Summers initially told law enforcement that he never communicated with the minor-victims, then later admitted that he had sent some messages, but claimed his Snapchat account was hacked during the duration when any sexually explicit messages were sent. He also claimed that the minor-victims' father or stepfather had set him up. In totality, we find Summers' conduct in 2018 and 2021 to be sufficiently "unusual and distinctive as to be like a signature." *United States v. Smalls*, 752 F.3d 1227, 1238 (10th Cir. 2014).[2]

With these procedural requirements satisfied, we find the Rule 404(b) evidence was admitted for more than one proper purpose. First, identity: "Our cases interpreting Rule 404(b) allow evidence that tends to show the defendant's identity as the perpetrator of the charged offense because the defendant proceeded by a unique *modus operandi* evident in prior crimes." *Smalls*, 752 F.3d at 1238; *Mares*, 441 F.3d at 1159 n.3 ("Signature quality evidence is often introduced to show identity."

---

[2] Summers' argument that the exact details of the conduct are not the same is unpersuasive. *See Smalls*, 752 F.3d at 1238 ("Where only one common characteristic of two crimes is particularly distinctive, that similarity may be sufficient on its own to show signature quality."); *c.f. Zamora*, 222 F.3d at 762 ("[A]lthough the uncharged crime must be similar to the charged offense, it need not be identical." (citing *United States v. Gutierrez,* 696 F.2d 753, 755 (10th Cir. 1982)).

(cleaned up)); *see also United States v. Isabella*, 918 F.3d 816, 841 (10th Cir. 2019) (finding no abuse of discretion where Rule 404(b) evidence was admitted because it "presented a *modus operandi* consistent with the prosecution's theory of [defendant's charged conduct].").  To be sure, Summers put his identity at issue when he claimed, as he did in 2018, that his Snapchat account was hacked and that he never sent sexual messages to the minor-victims.  *See United States v. Oberle*, 136 F.3d 1414, 1419 (10th Cir. 1998) ("Information that [defendant] had committed bank robberies in a similar manner was relevant . . . [because] the main issue was the identity of the robber.").

And as to intent, the court noted that Summers sent similar Snapchat messages to Miller and M.M in 2018 and received nude photos in return.  This in turn could show Summers made similar requests to J.H. with the intent to receive explicit photos from her.  *See United States v. Schene*, 543 F.3d 627, 643 (10th Cir. 2008) (affirming the district court's admission of uncharged child pornography images to show the defendant's intent and knowledge).

Considering these identifying circumstances and facts, we find the district court did not abuse its discretion in finding evidence of Summers' 2018 conduct was offered for a proper purpose.[3]

---

[3] Summers argues that admission of his 2018 conduct requires an "impermissible step of inferring [Summers has] such a propensity" to commit the instant crimes.  Apt. Br. 31.  But "[a]t no point was the jury asked to make the inference that [Summers] had acted in conformity with a character trait."  *United States v. Brooks*, 736 F.3d 921, 940 (10th Cir. 2013).

### 2.    *Relevancy*

Next, Summers argues evidence of his 2018 conduct is irrelevant because it does not serve a proper Rule 404(b) purpose.

"To determine the relevance of a prior bad act, we look to the similarity of the prior act with the charged offense . . . ." *Brooks*, 736 F.3d at 940. "Relevant evidence tends to make a necessary element of an offense more or less probable." *Davis*, 636 F.3d at 1298 (citing FED. R. EVID. 401).

We find the relevancy factor easily satisfied. Summers' 2018 conduct is admissible for Rule 404(b) purposes because it is sufficiently similar in totality to his charged conduct. *Davis*, 636 F.3d at 1299 (finding relevance to be met because the Rule 404(b) evidence was "similar to the crime charged in this case"); *Zamora*, 222 F.3d at 762 ("The more similar the act or state of mind is to the charged crime, the more relevant it becomes."). Moreover, Summers' intent was a necessary element that the government had to prove for several of the charges in the superseding indictment. *Mares*, 441 F.3d at 1156–57 ("[Evidence] is relevant if it tends to prove or disprove one of the elements necessary to the charged offense."). For example, Count 4 (Coercion and Enticement of a Minor to Engage in Sexual Activity) required the jury to find that Summers had "specific intent to commit the crime of attempted coercion and enticement" such that he "commit[ted] the act voluntarily and purposefully . . . to do something the law forbids . . . ." Vol. I, 219. Likewise, Count 5 (Sexual Abuse of a Minor) and Count 6 (Abusive Sexual Contact) both required the jury to find that Summers "knowingly engaged in a sexual act with J.H." *Id.* at 220,

13

222; *see United States v. Tan*, 254 F.3d 1204, 1212 (10th Cir. 2001) (defendant's prior convictions were "offered for the proper purpose of proving malice, an element of the crime" and thus "they [had] significant probative value.").

Undeterred, Summers argues his prior acts in 2018 and the charged conduct cannot be considered similar because it is "unreasonable to infer that Summers' motive and intent . . . remained the same three years later. " Aplt. Reply 12. Summers, tellingly, cannot provide any caselaw that definitively states three years is not close enough in time,[4] nor that this non-exclusive factor alone is definitive. *See Mares*, 441 F.3d at 1158 (identifying a number of non-exclusive factors in assessing similarity, including "whether the acts occurred closely in time"). Here, we find "[t]he events were of sufficient similarity to justify the district court's admission of the evidence under an abuse of discretion standard"—given the circumstances and facts here, "the length of time between the two incidents did not undermine its probative value." *Mares*, 441 F.3d at 1157 (citing *Olivo*, 80 F.3d at 1468).

Finally, we note it was Summers who admitted that he was previously accused of *similar* conduct during his interview with law enforcement, even before he was questioned about his 2018 conduct.

---

[4] We previously rejected the argument that "there is an absolute rule regarding the [duration] that can separate the charged offense and subsequent [or prior] similar acts." *United States v. Olivo*, 80 F.3d 1466, 1468 (10th Cir. 1996); *United States v. Franklin*, 704 F.2d 1183 (10th Cir.), *cert. denied*, 464 U.S. 845 (1983) ("[T]here is no absolute rule regarding the number of years that can separate offenses. Rather, the court applies a reasonableness standard and examines the facts and circumstances of each case." (citation omitted)).

We see no abuse of discretion in the trial court's determination that the Rule 404(b) evidence was relevant.

### 3. Rule 403

Summers argues that even if the evidence of his prior acts from 2018 were admissible under Rule 404(b), it should have been excluded pursuant to Rule 403 because the probative value of the evidence was substantially outweighed by its unfair prejudice. App. Br. 23.

Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. Without a doubt, "other act evidence that is relevant and offered for a proper purpose under Rule 404(b) must still survive the Rule 403 balancing test in order to be admitted." *Tan*, 254 F.3d at 1211. "The danger of unfair prejudice resulting from the evidence's admission must not substantially outweigh the probative value of the evidence under the balancing test of [Rule] 403." *Mares*, 441 F.3d at 1157 (citation omitted). "However, exclusion of evidence under Rule 403 . . . 'is an extraordinary remedy and should be used sparingly.'" *Tan*, 254 F.3d at 1211 (quoting *United States v. Rodriguez*, 192 F.3d 946, 949 (10th Cir. 1999)).

Here, we find no abuse of discretion as to the district court's Rule 403 ruling. Inevitably, "any evidence that would undermine [a defendant's] defense is prejudicial" to some extent. *Davis*, 636 F.3d at 1299; *see also Mares*, 441 F.3d at

15

1159 ("While the evidence was 'prejudicial' to [defendant] in the sense that it rebutted her theory of defense, such is the nature of evidence establishing an element of the charged crime."). But that alone is not enough. In this case, the charged offenses were "nearly identical to the prior act, and, combined with [Summers'] admission about the circumstances of the [prior] conduct, allow a fact finder to draw obvious conclusions bearing on [Summers'] defense" that he had no intention of sexually abusing J.H. or that his Snapchat account was hacked. *Mares*, 441 F.3d at 1159.

Nor do we find that any prejudice introduced by the Rule 404(b) evidence was so detrimental as to irreversibly damage Summers at trial. *See Tan*, 254 F.3d at 1211–12 (in order for evidence to be inadmissible under Rule 403, the evidence's unfair prejudice must do more than "damage the [d]efendant's position at trial"; it must "make[] a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocen[c]e of the crime charged.").[5]

---

[5] Summers claims that the district court never took steps to conduct a proper Rule 403 balancing test. Aplt. Br. 34. But Summers fails to cite any caselaw that requires magic words or a formula in conducting a Rule 403 analysis. Here, the district court determined that any prejudicial effect or harm under Rule 403 could be mitigated such as by "excluding explicit photos" from being admitted to the jury and by crafting a limiting instruction. Vol. III, 13, 19; *see also id.* at 15 ("[C]learly, 403 balancing has to occur"). Given the other findings the court made as part of its Rule 404(b) ruling, we cannot agree that the district court abused its discretion by failing to conduct a Rule 403 test. *See Isabella*, 918 F.3d at 842 ("the district court conducted a Rule 403 balancing analysis and excluded evidence that it found to be too prejudicial, including explicit pictures of [a minor]. . . .").

16

Still, Summers argues the "testimony from two alleged victims and a 29-minute recording of [his] previous interrogation" were overinclusive and failed to mitigate undue prejudice. We must not overlook the fact that evidence of prior similar acts is naturally prejudicial. *Davis*, 636 F.3d at 1299. Only *undue* prejudice should be avoided, and "[t]he district court has considerable discretion in performing the Rule 403 balancing test." *Tan*, 254 F.3d at 1211. "This deference is due to the trial court's suitability for the task given the judge's familiarity with the full array of the evidence." *United States v. Roberts*, 88 F.3d 872, 880 (10th Cir. 1996) (citations omitted). Based on the district court's "substantial deference" and our instruction that Rule 403 "should be used sparingly," *id.*, we see no Rule 403 violation here.

In sum, we do not find that the district court abused its discretion in admitting the Rule 404(b) evidence in light of Rule 403.

### 4.    *Limiting Instruction*

Lastly, Summers argues the court's limiting instruction did not cure any prejudice.

"The final [*Huddleston*] factor provides a limiting instruction should be given to the jury regarding the [Rule] 404(b) evidence upon defendant's request." *Davis*, 636 F.3d at 1299. "The limiting instruction must caution the jury to consider the evidence only for the limited purposes for which it is admitted and not as probative of bad character or propensity to commit the charged crime." *Mares*, 441 F.3d at 1157. "[A]bsent a showing to the contrary, we presume jurors will conscientiously follow the trial court's [limiting] instructions." *United States v. Nance*, 767 F.3d

17

1037, 1043 (10th Cir. 2014) (quoting *Brooks*, 736 F.3d at 941) (second alteration in original).

The district court provided the following limiting instruction to the jury:

> You have heard evidence of other crimes, acts, or wrongs engaged in by the defendant. You may consider that evidence only as it bears on the defendant's motive, intent, plan, or identity and for no other purpose. *Of course, the fact that the defendant may have previously committed an act similar to the one charged in this case does not mean that the defendant necessarily committed the act charged in this case.*

Vol. I, 205 (emphasis added); Vol. III, 521.

We find this limiting instruction satisfies the Rule 404(b) requirement—the jury was instructed to consider the Rule 404(b) evidence only for the listed purposes and not for propensity. Moreover, defense counsel consented and raised no objection to the final proposed jury instruction. *See Mares*, 441 F.3d at 1159 (the final *Huddleston* factor was satisfied because "the court offered and issued a limiting instruction approved by [defense] counsel").

\*     \*     \*

In conclusion, we find the district court did not abuse its discretion in declining to exclude evidence of Summers' 2018 conduct.[6]

---

[6] "Even if the district court did abuse its discretion in admitting the Rule 404(b) evidence, which it did not, any error would have been harmless in this case because, in light of the other overwhelming evidence of [Summers'] guilt, [we find that] the challenged Rule 404(b) evidence did not have 'a substantial influence on the outcome,' nor does it 'leave us in grave doubt as to whether it had such effect.'" *Nance*, 767 F.3d at 1043 n.5 (quoting *United States v. Sierra-Ledesma*, 645 F.3d 1213, 1226 (10th Cir. 2011)) (cleaned up). For instance, at trial, the government

## III.   Conclusion

For these reasons, we affirm.

---

presented over 3,000 Snapchat messages that included sexual messages sent by Summers to J.H.  And although Summers claimed his Snapchat account was hacked, the government presented sufficient evidence from which a jury could conclude that Summers was the user of the account.  Further, the jury heard testimony by Hogue that corroborated J.H.'s statements that Summers attempted to sexually abuse J.H. in the motel bathroom.