**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 24, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

BRYAN COMMANCHE,

      Defendant-Appellant.

No. 08-2257

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 06-CR-00496-JEC-1)**

---

P. Jeffery Jones, Santa Fe, New Mexico, for Defendant-Appellant.

Laura Fashing, Assistant United States Attorney (Gregory J. Fouratt, United States Attorney, with her on the briefs), Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **KELLY** and **LUCERO**, Circuit Judges, and **EAGAN**,[*] District Judge.

---

**LUCERO**, Circuit Judge.

---

[*] The Honorable Claire V. Eagan, United States District Judge for the Northern District of Oklahoma, sitting by designation.

Bryan Commanche was involved in a fight on an Indian reservation. Although he was not the initial aggressor, Commanche drew a box cutter during the fight and injured two of his opponents. He maintains that he did so in self defense. A jury rejected Commanche's self-defense claim and convicted him of two counts of assault resulting in serious bodily injury. He appeals, arguing that admission of two aggravated battery convictions involving sharp cutting objects was error.

We consider the admissibility under Federal Rule of Evidence 404(b) of bad act evidence that bears on a defendant's intent only insofar as a jury first infers that the defendant has a particular character trait and likely acted in conformity therewith. On the basis of the analysis that follows, we hold that such evidence is inadmissible because the jury must necessarily use it for an impermissible purpose (conformity) before it can reflect on a permissible purpose (intent). Because Commanche's two aggravated battery convictions bear on his intent only if a jury first infers that he is prone to violence, the district court abused its discretion by allowing testimony as to the facts underlying these convictions.

Secondarily, we are asked whether the same evidence is nonetheless admissible under Rule 609(a)(1) as a prior felony conviction. For reasons also explained in this opinion, we conclude that it is not. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand.

# I

On the evening of June 11, 2005, Commanche attended a feast on the Mescalero Indian reservation. Others in attendance included Cullen Kaydahzinne, Irwin Apachito, and Anjuanan Enjady. Kaydahzinne and Enjady had been dating for three or four years; Enjady and Commanche had a previous "one-night stand." During the evening, Kaydahzinne became jealous that Commanche was standing with Enjady. According to Commanche, he told Kaydahzinne he was not interested in Enjady, but Kaydahzinne was not appeased. Kaydahzinne, who was 6'1" and 225 pounds, pushed, then hit 5'11", 165-pound Commanche. According to Commanche he "started seeing stars" and fell to the ground after being struck. A fight then erupted.

During the fight, Kaydahzinne used his arms to shield his face as he attempted to push Commanche away. When he did so, he felt something cut him. Apachito saw Kaydahzinne stepping backward and came to his aid, pushing and striking Commanche. Apachito was also cut during the melee. Apachito testified that the instrument that cut him appeared to be a box cutter. Neither Kaydahzinne nor Apachito had a weapon of their own; both were seriously injured.

Commanche testified that he was afraid because Kaydahzinne was much larger than he and because Commanche had no friends at the feast. He stated that during the fight "[he] faced death more or less." For that reason, Commanche explained, he drew a box cutter from his pocket and started swinging. Asked

- 3 -

what might have happened to him if he had not used the weapon, Commanche replied, "I would have ended up dead."

Commanche was indicted on two counts of assault with a dangerous weapon with intent to do bodily harm in Indian Country in violation of 18 U.S.C. §§ 1153 and 113(a)(3), as well as two counts of assault resulting in serious bodily injury in Indian Country in violation of 18 U.S.C. §§ 1153 and 113(a)(6). Before trial, the government filed a notice of intent to offer evidence of other bad acts under Federal Rule of Evidence 404(b). Specifically, the government wished to use evidence that Commanche had twice been convicted of aggravated battery after altercations in which he brandished sharp cutting instruments. In that notice, the government merely recited the language of 404(b) as to the permissible purposes of that evidence, asserting that this evidence of "very similar" incidents would not be used to suggest that Commanche had a propensity for violence.[1] Commanche moved to suppress this evidence, contending that the jury should not be permitted to consider the prior convictions to show his propensity to commit a particular act. In response, the government argued that if the court excluded the aggravated battery convictions under Rule 404(b), it should nonetheless allow them for impeachment under Rule 609(a)(1).

---

[1] Both of Commanche's convictions resulted from incidents occurring after the fight at issue but before trial. This timeline did not affect the district court's analysis, nor does it affect ours. Rule 404(b) makes no distinction between pre- and post-incident crimes, referring only to "other crimes, wrongs, or acts."

At a hearing on these motions, Commanche's counsel conceded that the aggravated battery convictions would ultimately be admissible under Rule 609(a)(1) if Commanche testified. He argued, however, that the rule allowed the government solely to show the fact of conviction—not the underlying circumstances of the crimes, or even the charges. In response, the government contended that because Commanche had indicated he would assert self defense at trial, intent and planning would be crucial, rendering the facts underlying these other acts admissible. The district court noted: The evidence "isn't offered for propensity. It's offered to show means and manner." It then ruled that it would allow the use of the disputed evidence and issue a written opinion on the topic.

During trial, after requiring the government to specifically articulate the purpose of the evidence, the district court allowed two witnesses to testify that Commanche had twice been convicted of aggravated battery, once for an attack with a box cutter. The first witness, a New Mexico state assistant district attorney, testified:

> Q. Now . . . did you prosecute the defendant, Bryan Commanche, for an event that occurred on September 12, 2005?
>
> A. I did.
>
> . . . .
>
> Q. And the charge arising from September 12, 2005, was an aggravated battery with great bodily harm under the New Mexico statutes; is that correct?

A. That's correct.

. . . .

Q. And was there a weapon used in the case on September 12, 2005?

A. There was.

Q. And what would that weapon be consistent with?

A. With the wounds that the victim in this—case or that case sustained.  It was consistent with a sharp cutting instrument.

The second witness, a police captain, testified:

Q. Calling your attention specifically to December 5, 2005, are you aware of an assault, an aggravated battery—that is, the use of a deadly weapon—that occurred on or about December 5, 2005, involving a defendant by the name of Bryan Commanche?

A. Yes, I am familiar with that incident.

Q. And can you tell us, how you were involved in that case?

A. I was a patrol lieutenant at the time, and I was working the evening shift from 4:00 in the afternoon until 2:00 in the morning, and we received a dispatch indicating that a man was injured in an alley.

Q. Had that man been, in fact, assaulted?

A. Yes.  He had been stabbed several times.

Q. Stabbed?  And can you tell us, was there an investigation made to determine how that stabbing occurred or what instrument was used for that stabbing?

A. Yes, there was an investigation.

Q. Did it in fact lead to the finding of the instrument that was responsible for the stabbing of the victim?

- 6 -

A. Yes. The weapon was located that night.

Q. And what kind of weapon was it?

A. It was a box cutter with a large razor blade.

Q. You are aware, are you not, that Bryan Commanche pled guilty to that December 5, 2005, event; is that correct?

A. Yes, he did.

The court instructed the jury that it was to consider the aggravated battery convictions "only as [they] bear[] on the defendant's intent and for no other purpose. Of course, the fact that the defendant may have previously committed an act similar to the one charged in this case does not mean that the defendant necessarily committed the act charged in this case."

The only disputed issue at trial was whether Commanche acted in self defense. In closing argument, however, the government did not refer to the aggravated battery convictions except as they impacted Commanche's credibility. A jury convicted Commanche of both counts of assault resulting in serious bodily injury but acquitted him of both counts of assault with a dangerous weapon with intent to do bodily harm.

In a memorandum opinion and order issued after the verdict, the district court explained its rationale for allowing introduction of bad acts evidence under both 404(b) and 609(a)(1): Those acts were similar to the incident charged, they were in close temporal proximity, and Commanche testified at trial that he acted

- 7 -

in self defense.  The court concluded that the evidence of similar incidents bore on Commanche's intent.  On that conclusion, the district court determined that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice under Rule 403.

Commanche appeals, contending that the aggravated battery convictions were inadmissible under 404(b) and that any discussion beyond the mere fact of conviction was inadmissible under 609(a)(1).

**II**

Commanche argues that Rule 404(b) renders inadmissible evidence regarding the circumstances underlying his two aggravated battery convictions.  That rule provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b).

"The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character."  Huddleston v. United States, 485 U.S. 681, 686 (1988).  "In order to aid the district court's determination of whether evidence is offered to prove an issue other than character, the government must precisely articulate the purpose of the proffered evidence."  United States v. Birch, 39 F.3d

- 8 -

1089, 1093 (10th Cir. 1994); accord United States v. Youts, 229 F.3d 1312, 1317 (10th Cir. 2000).  We review the district court's decision to admit evidence under 404(b) for abuse of discretion.  United States v. Parker, 553 F.3d 1309, 1313 (10th Cir. 2009).  A district court abuses its discretion when it commits an error of law.  United States v. Tan, 254 F.3d 1204, 1207 (10th Cir. 2001).

**A**

Although the Rule 404(b) trail has been well marked by our precedent, a critical distinction emerges in this case that requires greater exploration.  In some instances, the permissible purposes of 404(b) evidence are logically independent from the impermissible purpose of demonstrating conformity with a character trait.  See, e.g., Parker, 553 F.3d at 1315-16.  That was the situation in Tan, 254 F.3d 1204, in which prior drunk driving convictions were admissible not because they indicated the defendant's propensity for driving drunk but because he had been warned of the risks of his actions.  Id. at 1207, 1210-11.  That is, the defendant's disregard of prior warnings helped to establish malice.  Notably, the prior drunk driving convictions were relevant to demonstrate malice without first requiring the jury to conclude that the defendant acted in conformity with an alleged character trait.  Id. at 1210-11.

In other cases, bad act evidence bears on a permissible purpose only if a jury first concludes that the defendant likely acted in conformity with a particular character trait.  Consider a case in which a defendant is accused of murdering his

wife using his car but claims that he thought that car was in reverse when it was actually in drive. To demonstrate the absence of mistake, the government attempts to elicit testimony that the defendant twice previously slapped his wife. In such a case, the disparate circumstances between the prior instances and the vehicular killing negate any possibility of directly using the prior instances to show lack of mistake. Rather, a jury could use this evidence to conclude that the defendant was not mistaken as to the status of his transmission only if it first concluded that he had a propensity for violence against his wife and this alleged murder was another such incident. Rule 404(b) does not allow evidence of other bad acts in such a case. If that defendant is to be convicted of murder, it must be based on his allegedly murderous act and not his bad character. We hold that evidence is admissible under Rule 404(b) only if it is relevant for a permissible purpose and that relevance does not depend on a defendant likely acting in conformity with an alleged character trait. United States v. Himelwright, 42 F.3d 777, 782 (3d Cir. 1994) ("[W]hen evidence of prior bad acts is offered, the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged." (emphasis added)); Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 4:28, at 746-47 (3d ed. 2007) ("[P]roof offered [of other bad acts] is not saved from the principle of exclusion by the mere fact that it supports a specific inference to a point like intent if the

necessary logical steps include an inference of general character or propensity . . . ."); see also United States v. Segien, 114 F.3d 1014, 1022 (10th Cir. 1997) (explaining that 404(b) is a rule of inclusion unless evidence is introduced for the impermissible purpose), overruled on other grounds as recognized in United States v. Hathaway, 318 F.3d 1001, 1006 (10th Cir. 2003).

We so hold based on the structure and purpose of the rule. Rule 404(b) carves out an exception to the general proposition that relevant evidence is admissible, see Fed. R. Evid. 402, precluding the use of other bad acts to prove character and demonstrate action in conformity therewith, Fed. R. Evid. 404(b). After explaining the impermissible use of other bad act evidence, Rule 404(b) delineates the boundary of impermissibility by clarifying that such evidence may nonetheless be admissible for non-conformity purposes. See 22 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure: Evidence § 5240, at 469 (2d ed. 2005) ("Rule 404(b) . . . states the rule of exclusion in terms that severely limit its scope, then indicates that evidence of other crimes may be admissible when offered for purposes that fall outside the narrow limits of the general rule. Under this scheme, the traditional exceptions becomes illustrative of the kinds of use that are not prohibited by the general rule."). Rule 404(b) then provides examples of permissible purposes. See Tan, 254 F.3d at 1208. The advisory committee's notes echo the foregoing structural explanation. Fed. R. Evid. 404 advisory committee's notes, 1972 Proposed Rules ("[E]vidence

of other crimes, wrongs, or acts is not admissible to prove character as a basis for suggesting the inference that conduct on a particular occasion was in conformity with it.  However, the evidence may be offered for another purpose . . . which does not fall within the prohibition.").  Because of the rule's structure, we do not read the permissible purposes demarcating the boundaries of 404(b)'s prohibition on propensity inferences as trumping the general proscription contained in the rule.

Using other bad acts to demonstrate conformity with a particular character trait is prohibited because it is prejudicial:

> The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

Michelson v. United States, 335 U.S. 469, 475-76 (1948) (footnotes omitted); see also Fed. R. Evid. 404 advisory committee's notes, 2006 Amendments.  Were we to condone the use of 404(b) evidence that reflects on a permissible purpose only if a jury first concludes that the defendant acted in conformity with a particular character trait, we would undercut the primary operative effect of the rule—to exclude a form of relevant evidence that is highly prejudicial.

**B**

With this background in mind, we consider whether Commanche's two aggravated battery convictions, and the facts underlying them, bear directly on a permissible purpose. In so doing, we focus on the sole disputed issue in the case: self defense. We conclude that this evidence is not directly tied to a permissible purpose.

We agree with the conclusion and analysis of the Fourth Circuit that a prior assault or battery conviction is immaterial to a self defense claim in a separate incident except to suggest conformity. United States v. Sanders, 964 F.2d 295, 298-99 (4th Cir. 1992).

> [E]vidence of [the defendant's] prior convictions for assault and possession of contraband is a prime example of evidence "which proves only criminal disposition." Since [the defendant] admitted the stabbing and claimed only that in doing so he acted in self-defense, the only factual issue in the case was whether that was the reason for the admitted act. The fact that [the defendant] had committed an assault on another prisoner and possessed contraband one year earlier had nothing to do with his reason for—his intent in—stabbing [the victim]. All that the evidence of the prior conviction of assault could possibly show was [the defendant's] propensity to commit assaults on other prisoners or his general propensity to commit violent crimes. . . . This is exactly the kind of propensity inference that Rule 404(b)'s built-in limitation was designed to prevent.

Id. (emphasis added).

That Commanche has twice been convicted of battering people in the past using a sharp object has no direct bearing on whether he acted in self defense in this particular instance. Although the government contends that those incidents

show that Commanche carried a box cutter knife as a weapon rather than a work tool, thus somehow showing that he intentionally lured a much larger man into a fight to provide himself an excuse to use the box cutter in retaliation, that theory does not wash. The record is undisputed that Commanche was attacked first. Thus it is irrelevant to the self-defense inquiry that Commanche carried a box cutter on at least one other occasion.

According to the government, Tan controls our consideration of the 404(b) evidence in this case. We disagree. In Tan, the defendant was charged with second degree murder for drunk driving. 254 F.3d at 1206. His previous convictions for drunk driving were admissible to demonstrate malice because they showed that the defendant had been warned of the risks of his crime. Id. at 1210-11. "A jury could infer from Defendant's prior drunk driving convictions that he is especially aware of the problems and risks associated with drunk driving." Id. at 1210. The convictions were not and could not be used to prove a character trait and action in conformity therewith. Id. at 1209 ("The driving record would not have been admissible to show that defendant had a propensity to drive while drunk." (quoting United States v. Fleming, 739 F.2d 945, 949 (4th Cir. 1984)). Tan is thus a rather different case.

Moreover, the present case is not one in which intent is proven circumstantially based on repeated substantially similar acts. See Segien, 114 F.3d at 1023 (allowing prior bad acts evidence to show intent and lack of

mistake). There is no indication in the record that Commanche claimed self defense on the two other occasions. Thus, the aggravated battery convictions make it no more likely that Commanche reacted with disproportionate force during this encounter, in which he was not the initial aggressor.

By contrast, the details of Commanche's prior aggravated battery convictions demonstrate nothing about his intent; they simply show that he is violent. It may be that Commanche's violent character would lead a jury to conclude that his fear was unreasonable or that he acted with disproportionate force and thus cannot properly claim self defense. Although this reasoning may have intuitive appeal, it is precisely what Rule 404(b) prohibits—a chain of inferences dependent upon the conclusion that Commanche has violent tendencies and acted consistent with those tendencies during the fight. Because on the facts of this case the 404(b) evidence cannot show that Commanche's self-defense theory was invalid unless the jury impermissibly infers that he acted in conformity with a violent predisposition, the two aggravated battery convictions are inadmissible under Rule 404(b). Accordingly, the district court abused its discretion because it committed an error of law in allowing evidence regarding Commanche's prior convictions under 404(b).[2]

---

[2] Because the evidence is not offered for a proper purpose and, as we explain below, that error is not harmless, we need not address the further 404(b) inquiries our precedent provides: (1) whether the evidence is relevant, (2) whether its probative value is substantially outweighed by its prejudicial effect,

(continued...)

## C

Was the error harmless? The government argues that it was. See Parker,
553 F.3d at 1316 (admission of other bad act evidence subject to harmless error
analysis). "A harmless error is one that does not have a substantial influence on
the outcome of the trial; nor does it leave one in grave doubt as to whether it had
such effect." Id. (quotation omitted). On the facts of this case, we cannot
conclude that the district court's error was harmless.

Because Commanche testified in his own defense, the government
contends, evidence of the fact of his convictions was narrowly admissible for
impeachment under Rule 609(a)(1), see Part III, infra. Thus, the district court's
error was in admitting the details of the prior convictions—a relatively trivial
mistake by the government's account. Further, the government claims any error
was insignificant because the erroneously admitted evidence went unmentioned in
its closing argument. We disagree.

As the Supreme Court recognized in Michelson, other crimes evidence is
strong medicine for juries. See 335 U.S. at 475-76. Even if not argued at
closing, when faced with the single disputed issue in the case—self defense—the
jury could not escaped the clear articulation that Commanche was a violent and
aggressive person who was merely repeating that tendency. We thus conclude

[2](...continued)
and (3) whether a limiting instruction is given if the defendant so requests.
Parker, 553 F.3d at 1314.

- 16 -

that this prejudicial evidence had a substantial impact on the outcome of the trial and was not harmless notwithstanding that the fact of Commanche's two convictions was admissible under Rule 609(a)(1).  See Part III, infra.

### III

Commanche also appeals the district court's admission of the details underlying his aggravated battery convictions under Federal Rule of Evidence 609(a)(1).  Although he concedes that the fact of conviction was admissible for impeachment, Commanche contends that the government should have been prohibited from delving into the details of the prior offenses.  We agree.

At the outset, we must consider our standard of review.  Ordinarily, we review claims regarding the scope of cross-examination for abuse of discretion. United States v. Begay, 144 F.3d 1336, 1338 (10th Cir. 1998).  However, the government urges that we review solely for plain error because Commanche did not object at trial.  Commanche responds that he preserved this issue by raising it in a motion in limine, citing United States v. Mejia-Alarcon, 995 F.2d 982 (10th Cir. 1993):  "[A] motion in limine may preserve an objection when the issue (1) is fairly presented to the district court, (2) is the type of issue that can be finally decided in a pretrial hearing, and (3) is ruled upon without equivocation by the trial judge."  Id. at 986.

Mejia-Alarcon involved an objection under Rule 609(a)(2) but suggested in dicta that a 609(a)(1) objection would fail the second prong of the above-quoted

test.  Id. at 987 n.2.  We reasoned that a 609(a)(1) ruling, unlike a 609(a)(2) ruling, necessarily requires a district court to balance the prejudicial effect and probative value of the disputed evidence, a task that can only be performed by reference to the other contextual evidence presented at trial.  Id.  Although Mejia-Alarcon's discussion of this issue was dicta, we consider it well-reasoned and choose to follow it.  In most cases, the admissibility of 609(a)(1) evidence cannot be finally decided in a pretrial hearing.  Accordingly, the second prong of the Mejia-Alarcon exception is not met, and our review of this issue is for plain error.

"In order to prevail on plain error review, a party must show there is (1) error, (2) that is plain, (3) which affects the party's substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings."  United States v. Poe, 556 F.3d 1113, 1128 (10th Cir. 2009) (quotation and alteration omitted).  "Error is plain only if it is . . . contrary to well-settled law."  Id. at 1129 (quotations omitted).

Rule 609(a)(1) provides, "For the purpose of attacking the character for truthfulness of a witness, (1) . . . evidence that an accused has been convicted of . . . a [felony] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused . . . ."  In United States v. Wolf, 561 F.2d 1376 (10th Cir. 1977), we established the scope of permissible cross-examination under Rule 609:

Ordinarily, it is improper for the prosecution to examine into the details of the crime for which the accused was convicted. The cross-examination should be confined to a showing of the essential facts of convictions, the nature of the crimes, and the punishment. Care should be taken to protect the accused as far as possible from being convicted because of past conduct and not the crime for which he is being tried.

Id. at 1381. In United States v. Albers, 93 F.3d 1469 (10th Cir. 1996), we relied on Wolf and held "the defendant was entitled to the protection of the rule that only the prior conviction, its general nature, and punishment of felony range were fair game for testing the defendant's credibility. The further damaging details the prosecutor spelled out were not." Id. at 1480. That rule remains good law. See United States v. Howell, 285 F.3d 1263, 1267 (10th Cir. 2002) (quoting Albers, 93 F.3d at 1479-80).

Accordingly, we conclude that the district court erred by allowing testimony on the details of the crimes for which Commanche was convicted. That Commanche was twice convicted of aggravated battery was properly admissible. That the crimes involved cutting instruments consistent with the box cutter used in the present case was not. As the government essentially concedes in its briefing, this error was plain; it was contrary to well-settled law. Howell, 285 F.3d at 1267; Albers, 93 F.3d at 1480; Wolf, 561 F.2d at 1381.

For the same reasons we concluded that the 404(b) error was not harmless, see Part II.C, supra, we hold that the court's 609(a)(1) error affected Commanche's substantial rights. Disclosing the details of Commanche's other

crimes made it significantly more likely that the jury was convicting Commanche because of those past crimes, and his propensity for violence, rather than simply rejecting his claim of self defense. Lastly, because of the risk that Commanche was tried for his past crimes instead of the offense at issue, the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. Accordingly, we conclude that the district court plainly erred in allowing testimony as to the details of Commanche's previous crimes.[3]

## IV

For the reasons stated, the judgment of the district court is **REVERSED**. We **REMAND** for further proceedings consistent with this opinion.

---

[3] Commanche also raises a cumulative error claim, but we need not address it given our reversal of his conviction on other grounds.