FILED
United States Court of Appeals
Tenth Circuit

January 27, 2012

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

BEVERLY ENRIQUEZ,

Defendant-Appellant.

No. 11-2097

(D.C. No. 2:10-CR-00695-BB-2)
(D. N.M.)

---

## ORDER AND JUDGMENT[*]

---

Before **BRISCOE,** Chief Judge, **BALDOCK** and **TYMKOVICH**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is, therefore, submitted without oral argument.

Defendant-appellant Beverly Enriquez was convicted on one count of conspiracy to possess with intent to distribute fifty kilograms and more of marijuana, in violation of 21 U.S.C. § 846; one count of possession with intent to distribute fifty kilograms and

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

more of marijuana, in violation of 21 U.S.C. § 841(b)(1)(C); one count of conspiracy to import fifty kilograms and more of marijuana from outside the United States, in violation of 21 U.S.C. § 963; and one count of importing fifty kilograms and more of marijuana from outside the United States, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and (b)(3). She was sentenced to fifty-seven months' incarceration and three years of supervised release. In this direct appeal, she argues that the district court erred when it admitted evidence of a prior drug offense under Federal Rule of Evidence 404(b) to show she had knowledge of the presence of drugs in this case. She also contends that the evidence should have been excluded as unduly prejudicial. We conclude that the district court did not abuse its discretion in admitting the evidence of Enriquez's prior arrest, plea agreement, and conviction because the evidence was relevant to a proper purpose and its probative value was not substantially outweighed by the risk of undue prejudice. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. Background

*Offense Conduct and Arrest*

This case arises from a border stop at the Columbus, New Mexico, port of entry, on December 21, 2009, when officers seized ninety-seven kilograms of marijuana from a vehicle in which Enriquez was a passenger. Enriquez was traveling with her minor daughter and Vanessa Ann Marie Maestas,[1] who was driving the blue 2000 Ford

---

[1] Maestas was also indicted in No. CR 10-695 BB and charged with the same four drug-trafficking counts. ROA, Vol. 1, at 1. The jury acquitted her on all counts.

Excursion. ROA, Vol. 3, at 84-85. When Maestas stopped at the primary screening lane, an officer asked her a few questions before directing her to pull into a secondary screening lane. Id. Once there, officers directed the three occupants to get out of the car and wait in a nearby building. Id. at 86.

At the secondary screening area, Officer Joel Avalos initiated a search of the vehicle. Id., Supp. Vol. 3, at 132. He found several boxes of perfume in the back seat of the vehicle and noticed an odor of perfume. Id. Another officer lowered a fiberoptic scope into the gas tank to attempt to see inside. Id. The officer had difficulty getting the scope inside, so he referred the vehicle to a nearby VACIS machine, which is akin to an x-ray machine. Id. The VACIS produced an image of the gas tank showing a "dark substance" that did not appear to be gasoline. Id. at 132-33. A drug-sniffing dog then alerted to the gas tank area, so officers put the vehicle on a lift to attempt to open the tank. Id. at 133. Once they opened the tank, they found ninety-three individually wrapped, vacuum-sealed packages containing a substance that field-tested positive for marijuana. Id. at 134.

In the meantime, Agent Roy Vasquez interviewed the front-seat passenger in the vehicle, defendant Enriquez. Enriquez told Agent Vasquez that they had traveled from Deming, New Mexico, to Palomas, Mexico, for a short visit, stopping at a pharmacy and a car wash. Id. at 180. She advised the agent that someone could have loaded the vehicle with narcotics while she was inside the pharmacy. Id. Notably, she made this statement before anyone told her that narcotics had been found in the vehicle. Id. at 181. At that

-3-

point, another officer came into the room and showed Enriquez a receipt he had recovered from the vehicle. Id. The receipt was from a perfume shop in El Paso, and it was dated December 21, 2009—the same date Enriquez claimed she had only driven from Deming to Palomas. See id., Supp. Vol. 1, at 4. Upon seeing the receipt, Enriquez changed her story.

Enriquez explained that she had crossed the border on foot at El Paso, not Deming, to pick up the vehicle, which was in Palomas. Id., Supp. Vol. 3, at 182-83. Enriquez purchased three one-way airfares from Phoenix to El Paso for herself, her daughter, and Maestas. Id. She booked and paid for the tickets at the airport a few hours before departure. Id., Supp. Vol. 1, at 7 (Ex. 40). They flew to El Paso, stayed the night, and walked across the bridge to Juárez, Mexico the next morning. Id., Supp. Vol. 3, at 182. In Juárez, an unknown individual gave them a ride to Palomas, where the Excursion was parked outside a pharmacy. Id. From there, the three drove across the border and sought entry to the United States.

Border agents had been on the lookout for the Excursion. There was a border alert for a blue Ford Excursion with Arizona plates that might contain narcotics stored inside the gas tank. Id. at 99-100, 107. The Arizona license plate number listed on the alert matched the license plate on the vehicle Maestas was driving. Id. at 107-08. Vehicle records indicate the Excursion was registered to Maestas, but she had purchased the vehicle from Enriquez only two weeks before the stop. Id. at 179. In fact, the vehicle changed hands so close to the date of the stop that it was still insured in Enriquez's name.

-4-

Id. at 210-11.  Enriquez had not owned the vehicle for long either, having purchased it the month before.  Id. at 130.

Agents arrested Maestas, but they released Enriquez pending further investigation. Enriquez was later indicted on four drug-trafficking counts.  Id., Vol. 1, at 1-3.  The indictment also contained charges of aiding and abetting on counts two and four, in violation of 18 U.S.C. § 2.[2]  Id.

*Prior-Offense Evidence*

The government filed two notices of intent to offer evidence of other crimes or bad acts under Federal Rule of Evidence 404(b).  Id. at 10, 38.  In the second, supplemental notice, the government explained that Enriquez had previously been convicted of possession with intent to distribute cocaine.  Id. at 41.  The conviction arose from an April 2009 traffic stop in Oklahoma County, Oklahoma, where a sheriff's officer, Sergeant Ronald Walker, stopped Enriquez while she was driving a green 2000 Ford Excursion—a different vehicle than the blue one she later bought—north on Interstate 35. Id. at 39.  The government claimed this prior arrest and conviction was "relevant and probative of [Enriquez's] motive, knowledge, intent, and plan to distribute bulk marijuana in this case."  Id. at 41.  The notice indicated that Sergeant Walker would testify that he observed unusual "smudges" in the dust inside the vehicle's rear quarter panels, where he concluded packages of narcotics could have recently been hidden.  He would also testify

---

[2] Maestas also was charged with these offenses in the same indictment.

that a drug-sniffing dog alerted to the odor of narcotics in that region of the vehicle, although no narcotics were found there.  The government argued that Enriquez's

> modus operandi is to use large sport utility vehicles to transport drugs hidden therein, and it is no mistake or accident that less than eight months after her April 2009 arrest, and just seven months after her May [2009] conviction, bulk marijuana was found in the gas tank of a Ford Excursion she was riding in and which she had been the registered owner of until approximately two weeks before.

Id.

Enriquez objected to the admission of this evidence and moved in limine to exclude it.  Id. at 70.  She argued that the relevance of the previous offense was "slight" because it involved a much smaller quantity of a different narcotic (cocaine) in a different location in the vehicle.  Id. at 72.  She also argued that Sergeant Walker's testimony about the "smudges" inside the rear quarter panels and the drug dog's alert were not probative of Enriquez's knowledge of the marijuana in the blue Excursion's gas tank.  Id. at 73.

The court deferred ruling on the admissibility of evidence surrounding the prior offense until trial was underway.  Id., Vol. 3, at 8.  On the first day of trial, the court admitted evidence regarding the prior conviction as relevant to the purpose of establishing Enriquez's knowledge of the narcotics in the gas tank, citing our decisions in United States v. Rackstraw, 7 F.3d 1476 (10th Cir. 1993), and United States v. Jefferson, 925 F.2d 1242 (10th Cir. 1991).  ROA, Supp. Vol. 3, at 197.  As expected, Enriquez's knowledge was a central issue at trial.  Enriquez's defense was that she did not know the vehicle contained drugs.

-6-

The government elicited testimony from Sergeant Walker, the officer who stopped Enriquez in Oklahoma in the prior case. He testified that on April 1, 2009, he observed Enriquez driving northbound on Interstate 35 through Oklahoma County, Oklahoma. Id., Vol. 3, at 143. Sergeant Walker stopped Enriquez for drifting out of the lane of travel twice. Id. When he approached the vehicle, he observed that Enriquez's "level of nervousness seemed above what [he was] used to seeing on an average stop." Id. at 144. Sergeant Walker became suspicious of the story Enriquez told him, so he returned to his patrol car to investigate. Id. at 145. He called a canine unit to the scene and contacted the El Paso Intelligence Center, which advised him that Enriquez's vehicle had crossed the United States-Mexico border at Douglas, Arizona, twenty hours before. Id. at 146. After Sergeant Walker asked Enriquez about her travel plans and the trip to Mexico, Enriquez appeared nervous and gave conflicting information. She told Sergeant Walker that she had indeed crossed into Mexico to take her sick daughter to a doctor. Id. at 151. She said she dropped her children off in Arizona on the way to Oklahoma. Id.

Sergeant Walker testified that after the canine unit arrived on the scene, the dog alerted to an odor of narcotics near a rear quarter panel of the vehicle. Id. at 147. Officers began a full search of the vehicle and checked inside the rear quarter panels. Sergeant Walker testified that

> inside the quarter panels, when we searched the vehicle -- we
> searched all of it, and inside the quarter panels, there's dust.
> You're always going to have dust -- a dust cover of a used
> vehicle, there's always going to be dust inside. And both
> quarter panel areas had fresh smudges and finger smudges

where it looked like packages had been dragged in and out of those quarter panels recent -- very recently. I mean, they were extremely fresh marks inside the quarter panels.

Q. Sergeant Walker, what significance, if any, did the dust in the quarter panel area have to you?

A. Due to the location, there's no reason why the average citizen would have to get back into these places. It is common -- it is something that we see that is commonplace for placing, transporting, and smuggling contraband.

Id. at 148. While Sergeant Walker did not find narcotics behind the rear quarter panels, a search of the interior of the vehicle revealed ten grams of cocaine, which Enriquez claimed to have purchased in Phoenix the day before for personal use. Id. Sergeant Walker arrested Enriquez, and she was charged with possession of cocaine. As part of a plea agreement, Enriquez pleaded guilty to possession of a controlled dangerous substance with intent under Okla. Stat. Ann. tit. 63, § 2-401, and did not receive jail time. Id., Vol. 4, at 1-6 (Gov't Ex. 26).

At the close of evidence in this case, the district court instructed the jury that it should consider the "evidence of another crime engaged in by Ms. Enriquez . . . only as it bears on her knowledge and for no other purpose." Id., Vol. 1, at 102. The court also instructed the jury that "the fact that she may have previously committed an act similar to the one charged in this case does not mean that she necessarily committed the act charged in this case." Id. The jury convicted Enriquez on all charges.

## II. Discussion

Enriquez's sole contention on appeal is that the district court erred when it

admitted evidence of her prior arrest, conviction, and plea agreement. She argues that the evidence likely caused the jury to conclude that she had "a propensity to smuggle narcotics across the border," Aplt. Br. at 7, even if it was somewhat relevant to show her knowledge of narcotics in the gas tank. She also contends that the evidence should have been excluded because its "slight probative value [was] substantially outweighed by the danger of unfair prejudice." Id. The government argues that the evidence was properly admitted, but even if it was admitted in error, the effect of the admission was harmless.

### A. *Rule 404(b) Evidence*

Enriquez first argues that the government's evidence regarding her prior arrest, conviction, and plea agreement in Oklahoma "does not support an inference of plan, motive[,] or knowledge by Enriquez in this case." Id. at 6. She contends that, for the jury to use the prior offense to infer that she had knowledge of the marijuana in the gas tank, the jury would first have to conclude that she had a propensity to smuggle narcotics across the border.

We review for abuse of discretion a district court's decision to admit evidence of a prior offense under Federal Rule of Evidence 404(b). United States v. Sierra-Ledesma, 645 F.3d 1213, 1226 (10th Cir. 2011). "But even if we conclude the district court abused its discretion, such 'error is considered harmless unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect.'" Id. (quoting United States v. Becker, 230 F.3d 1224, 1233 (10th Cir. 2000)).

Under Federal Rule of Evidence 404(b), "evidence of other crimes, wrongs or acts

-9-

is not admissible to prove the character of a person in order to show action in conformity therewith." In other words, the government may introduce evidence of a defendant's prior wrongs only "if it is relevant to something material other than criminal propensity." United States v. Shepherd, 739 F.2d 510, 512 (10th Cir. 1984). "Rule 404(b) admissibility is a permissive standard and 'if the other act evidence is relevant and tends to prove a material fact other than the defendant's criminal disposition, it is offered for a proper purpose under Rule 404(b) and may be excluded only under Rule 403.'" United States v. Davis, 636 F.3d 1281, 1298 (10th Cir. 2011) (quoting United States v. Parker, 553 F.3d 1309, 1314 (10th Cir. 2009)). Relevant purposes include raising an inference that the defendant had knowledge of the existence of contraband hidden inside a vehicle. See United States v. Lazcano-Villalobos, 175 F.3d 838, 846 (10th Cir. 1999).

We apply a four-part test to determine whether the district court properly admitted evidence of a defendant's prior crimes or wrongs. This test requires that (1) the evidence was offered for a proper purpose under Federal Rule of Evidence 404(b), (2) the evidence was relevant under Federal Rule of Evidence 401, (3) the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice under Federal Rule of Evidence 403, and (4) the district court, upon request, instructed the jury to consider the evidence only for the purpose for which it was admitted. United States v. Wilson, 107 F.3d 774, 782 (10th Cir. 1997) (quoting Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).

First, the evidence must be admitted for a proper purpose. The government

-10-

introduced the evidence of the Oklahoma offense to show Enriquez's knowledge of the presence of narcotics in the gas tank on this occasion. Knowledge is enumerated as a proper purpose under Rule 404(b). See Fed. R. Evid. 404(b); United States v. Mares, 441 F.3d 1152, 1156 (10th Cir. 2006) ("Evidence is admitted for a proper purpose if it is allowed for one or more of the enumerated purposes in Rule 404(b)."). We conclude that the purpose of the evidence was proper.

Second, the evidence must be relevant. Relevant evidence tends to make a matter of consequence to a case more or less probable. Fed. R. Evid. 401. In the context of Rule 404(b), "prior narcotics involvement is relevant when that conduct is 'close in time, highly probative, and similar to the activity with which the defendant is charged.'" Wilson, 107 F.3d at 785 (quoting United States v. McKinnell, 888 F.2d 669, 676 (10th Cir. 1989)).

Before trial, the government argued that the evidence of the prior offense would establish that Enriquez knew about the narcotics in the gas tank in this instance because of the factual similarities between the two incidents. Enriquez contends that the circumstances of her Oklahoma arrest and conviction are too dissimilar from the facts in this case to be relevant to her knowledge of the presence of narcotics in this case. She argues that the Oklahoma offense for possession with intent to distribute only ten grams of cocaine "is entirely unrelated to the charged offenses in this case of importing bulk quantities of marijuana, and served no evidentiary purpose other than propensity." Aplt. Br. at 11. She correctly notes that her prior conviction involved a significantly smaller

-11-

quantity of a different drug. But Sergeant Walker's testimony about the surrounding circumstances of the Oklahoma traffic stop illustrated the key similarities between the two cases. He testified that a drug-sniffing dog alerted to the odor of narcotics near a rear quarter panel of Enriquez's previous vehicle, which was the same year, make, and model vehicle—a 2000 Ford Excursion—as the vehicle in this case. ROA, Vol. 3, at 147. Sergeant Walker also testified that he observed "fresh smudges" on the dust inside the rear quarter panels "where it looked like packages had been dragged in and out of [the voids behind] those quarter panels . . . very recently." Id. at 148. Sergeant Walker explained that police commonly find narcotics hidden in the void behind the rear quarter panels, which he said are especially large on the Ford Excursion. Id. at 148-49.

This evidence meets the minimal relevance threshold required by Rule 401. "The Tenth Circuit has long recognized the relevance of previous wrongs and crimes in the context of narcotics violations." United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989) (quoting United States v. Brown, 770 F.2d 912, 914 (10th Cir. 1985)). Evidence of past drug offenses can be relevant to a defendant's knowledge when the defendant claims ignorance of the presence of narcotics. See Rackstraw, 7 F.3d at 1480 ("The evidence was clearly probative on the issue of [the defendant's] knowledge, showing that [the defendant]—contrary to the impression he gave during his direct testimony—was not a naive, unsophisticated mechanic who drove a car to Denver that happened to contain cocaine."). In this case, the evidence tended to make a fact of consequence to the case—knowledge of narcotics stored in a large void of a Ford Excursion—more probable

-12-

than it would have been without the evidence. The underlying circumstances in the two offenses are sufficiently similar to be helpful to the jury in deciding a disputed issue. While Sergeant Walker did not actually recover narcotics from behind the rear quarter panels, the presence of fresh smudges in a rarely accessed area and a positive alert from a drug-sniffing dog provide circumstantial evidence that Enriquez knew there were drugs hidden inside the vehicle in this case. See Lazcano-Villalobos, 175 F.3d at 846 (concluding that evidence of a prior arrest for possession of narcotics found in a hidden compartment was relevant to establishing the defendant's knowledge of concealed narcotics in a later case "because it shows he previously owned a car in which he concealed contraband in a hidden compartment"). Thus, we conclude that the evidence was relevant.

Third, the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice. "The trial court has broad discretion to determine whether or not prejudice inherent in otherwise relevant evidence outweighs its probative value." Record, 873 F.2d at 1375. "Although explicit findings [of the evidence's probative value and prejudicial effect] are clearly preferable," Lazcano-Villalobos, 175 F.3d at 847, a district court's failure to make such findings is not error per se. See Wilson, 107 F.3d at 783.

Enriquez argues that the jury necessarily had to consider the evidence as proof of her criminal propensity before it could reflect on the permissible purpose of knowledge. She relies on United States v. Commanche, where we concluded that the district court

erred when it admitted evidence of a defendant's previous aggravated battery convictions. 577 F.3d 1261, 1269 (10th Cir. 2009). In that case, the government offered evidence of the defendant's prior offenses to demonstrate that the defendant did not act in self-defense. Id. at 1268. We concluded that the prior offenses were not relevant to a proper purpose under Rule 404(b) because "the details of [the defendant's] prior aggravated battery convictions demonstrate nothing about his intent; they simply show that he is violent." Id. at 1269. We held that evidence of prior wrongs is admissible under Rule 404(b) "only if it is relevant for a permissible purpose and that relevance does not depend on a defendant likely acting in conformity with an alleged character trait." Id. at 1267. We explained that the evidence likely caused the jury to make "a chain of inferences dependent upon the conclusion that [the defendant] has violent tendencies and acted consistent with those tendencies during the fight." Id. at 1269.

Commanche is inapposite. The permissible purpose of knowledge in this case is "logically independent from the impermissible purpose of demonstrating conformity with a character trait." Id. at 1266. Enriquez's prior conviction for possession of cocaine with intent to distribute does not prejudicially suggest her propensity for smuggling narcotics across the border. It was logically possible for the jury to consider the Oklahoma evidence as circumstantial evidence of Enriquez's knowledge without first using the evidence for the impermissible purpose of conformity. For example, the jury could have inferred that Enriquez knew how to smuggle large quantities of narcotics within compartments of a 2000 Ford Excursion based on the unusual presence of smudge marks

-14-

inside the rear quarter panels of Enriquez's old Excursion. While the evidence was "prejudicial" to Enriquez insofar as it rebutted her defense, "such is the nature of evidence establishing an element of the charged crime." Mares, 441 F.3d at 1159. To some extent, any evidence of a prior crime poses some danger of being interpreted as evidence of criminal predisposition, but a proper limiting instruction vitiates this possibility. Moreover, "Rule 404(b) admissibility is a permissive standard." Davis, 636 F.3d at 1298. Evidence of a prior offense that is both recent and similar in nature to the charged conduct is typically admissible, provided that the evidence does not require the jury to follow a chain of logical inferences that necessarily includes an inference of general character or propensity. See Commanche, 577 F.3d at 1267. We conclude that the probative value of the evidence was not substantially outweighed by the danger of undue prejudice.

Fourth, the district court's jury instructions should properly advise the jury of the limited purpose for which it should consider the evidence. Enriquez does not challenge the sufficiency of the jury instruction. We conclude that the court's instruction was proper because it "caution[ed] the jury to consider the evidence only for the limited purposes for which it is admitted and not as probative of bad character or propensity to commit the charged crime." Mares, 441 F.3d at 1157.

In sum, the district court did not abuse its discretion under Rule 404(b) in admitting the evidence of Enriquez's prior offense to establish that she knew drugs were in the gas tank on this occasion.

-15-

### B. Rule 403

Enriquez also contends that the district court should have excluded the evidence of her prior offense under Rule 403. We review decisions to admit evidence under Rule 403 for an abuse of discretion. United States v. Rodriguez, 192 F.3d 946, 949 (10th Cir. 1999). The rule provides that a district court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403.

Enriquez argues that the probative value of the Oklahoma conviction is "questionable," and "[t]he likelihood that the jury considered Walker's testimony and the plea agreement for purposes of propensity to smuggle drugs is high." Aplt. Br. at 13-14. We disagree. This evidence did not, as Enriquez contends, "prevent [her] from having a fair opportunity to defend against the crime charged in this case." Aplt. Reply Br. at 6. The government did not overemphasize the importance of the Oklahoma offense; indeed, there was no mention of it in the government's closing argument. The evidence was probative of a disputed issue in the case: Enriquez's knowledge. To be sure, it is possible to draw factual distinctions between the Oklahoma offense and the charged conduct in this case, and some prejudice is expected whenever evidence of prior criminal acts is admitted. See Mares, 441 F.3d at 1159 ("While the evidence was 'prejudicial' to Mares in the sense that it rebutted her theory of defense, such is the nature of evidence establishing an element of the charged crime."). But we cannot say that the district court abused its discretion in admitting this evidence, especially in light of our prior rulings that

a district court's exclusion of relevant evidence under "Rule 403 is an extraordinary remedy [that] should be used sparingly." Id. (internal quotation marks omitted); see also Rodriguez, 192 F.3d at 949; United States v. Tan, 254 F.3d 1204, 1211 (10th Cir. 2001).

## III. Conclusion

The district court did not abuse its discretion in admitting evidence of Enriquez's prior offense. We therefore AFFIRM Enriquez's conviction and the sentence imposed.

Entered for the Court


Mary Beck Briscoe
Chief Judge