**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 7, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LUIS ALBERTO UGALDE-
AGUILERA,

    Defendant - Appellant.

No. 13-2011

(D.C. No. 2:11-CR-01007-MV-1)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **EBEL** and **KELLY**, Circuit Judges.

---

Luis Alberto Ugalde-Aguilera (Ugalde) appeals his conviction for

conspiracy to possess with intent to distribute 50 kilograms or more of marijuana,

in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846; and possession with

intent to distribute 50 kilograms or more of marijuana, in violation of 21 U.S.C.

§§ 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2.  On appeal, Ugalde argues that the

district court abused its discretion by admitting evidence of several similar drug-

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

transporting trips under Rule 404(b).  We affirm.

# I
## *Factual Background*

Ugalde and Pablo Chavez-Posada (Chavez) drove semi-trucks for a trucking company in El Paso, Texas.  On January 26, 2011, Ugalde and Chavez began a trip on which they were to transport automobile parts from El Paso to Toledo, Ohio.  In addition to their legitimate cargo, however, they also carried over 150 pounds of marijuana.  Their plan was to deliver the marijuana to Chicago, Illinois, before continuing on to Toledo.

They did not make it far.  In New Mexico, they were stopped at a border patrol checkpoint, where border patrol agents x-rayed their truck.  The scan revealed what looked like bricks of narcotics behind the passenger seat.  Due to a miscommunication among the border patrol agents, however, when Agent Cesar Hernandez physically entered the truck to verify the scan, he looked in the wrong place and found nothing suspicious.  Ugalde and Chavez were then released and they drove away from the checkpoint.  Minutes later, Agent Hernandez saw the scan, realized his mistake, and the agents drove after the truck.  After stopping the truck a second time, the agents obtained consent to search the cabin again, and Agent Hernandez found large trash bags containing bricks of marijuana.  As a result, Ugalde and Chavez were arrested.

After being Mirandized, Ugalde confessed not only to transporting the

2

drugs for which he was arrested, but also to making several similar drug-transporting trips with Chavez during the preceding year. Likewise, Chavez told the agents that he and Ugalde had transported marijuana to Chicago on three occasions in the preceding year. On those prior occasions, according to Chavez, they delivered the marijuana to a Wrangler warehouse parking lot in the outskirts of Chicago. At the Wrangler warehouse, the same black Cherokee arrived to receive the drugs on all three occasions, although different men were driving it each time.

### *Procedural History*

A grand jury returned a two-count indictment charging Ugalde with conspiring to possess with intent to distribute 50 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846 (Count 1); and with possessing with intent to distribute 50 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2 (Count 2).

Prior to trial, the government noticed its intent to offer evidence of the prior deliveries under Federal Rule of Evidence 404(b). Ugalde moved in limine to exclude the 404(b) evidence. The district court subsequently heard arguments regarding the 404(b) evidence, but decided to "see how the trial unfolds" before ruling on the issue. R. Vol. III at 6.

As trial proceeded, however, a series of statements by defense counsel led the court to conclude that the door had been opened to permit the introduction of

3

404(b) evidence. First, during his opening statement, defense counsel stated that "Mr. Chavez might testify to additional incidents where he committed acts." Id. at 36. Defense counsel also referred to Chavez's knowledge of the men "who drive a black SUV in the Chicago area" who would receive the marijuana. Id. at 37.

Second, during defense counsel's cross-examination of Chavez, he asked Chavez whether Chavez had told the agents that he and Ugalde were carrying only 50 pounds of marijuana. The government objected, because it was on the previous trips, not the January trip, when Ugalde and Chavez transported approximately 50 pounds of marijuana.

Third, defense counsel asked Chavez about apparently conflicting statements concerning whether Ugalde had loaded the marijuana himself, or whether Chavez and Ugalde had loaded the marijuana together. This question was problematic as well, because the two loaded the marijuana together before the previous trips.

Fourth, defense counsel had the following exchange with Chavez:

> Q. Mr. Chavez, you also explained when you met with [an agent] that – you gave a description as to where you were going to drop the marijuana off in Chicago, isn't that right?
>
> A. Yes, sir.
>
> Q. You knew that it was near a Wrangler Jean manufacturing plant?

4

> A. I knew that it was a place nearby that had a company name similar to Wrangler; at least it seemed similar by the letters to the word Wrangler.
>
> Q. And you also knew, Mr. Chavez, based on that report which is in front of you, that the men who picked up the marijuana were driving a black Cherokee, isn't that right?
>
> A. Yes, sir. I saw them in the mirror.

Id. at 91-92.

Fifth, and finally, defense counsel attempted to impeach Chavez by asking him about his statement to the border patrol agents that he would receive $1,500 for the January trip. According to the government, however, Chavez's statement concerning the $1,500 payment concerned one of the previous trips.

At this point, the district court called a recess and heard argument from both counsel on the issue of whether defense counsel had opened the door to the 404(b) evidence. The government pointed out that it made no sense for Chavez to know details about the Wrangler warehouse or the black Cherokee if his testimony pertained only to the January 2011 trip, because Ugalde had given agents the push-to-talk number that he was supposed to dial in order to receive directions on where to deliver the marijuana. Finally persuaded, the district court addressed defense counsel as follows:

> [Y]ou attempted, it appears, to try to make this witness look like he was lying, or at least very confused about this incident by mixing up the prior instances of alleged transporting, knowing that I had not allowed the government to introduce thus far those prior instances because of 403 concerns.

5

I mean, a perfect example is the men in black stuff. The drugs never made it to the men in black who picked up the marijuana. So it was clear that the men in black reference was to other instances, the prior instances, which the Court had clearly not allowed the government to get into out of concerns of Rule 403 matters. By you raising it twice already today, jurors are probably wondering, What men in black?

Id. at 111. The court then ruled that the 404(b) evidence could come in, and Chavez went on to testify as to those prior drug-transporting trips.

As regards the 404(b) evidence, the district gave the jury a limiting instruction prior to its commencing deliberations. Ugalde was convicted on both counts.

## II

The issue presented is straightforward: Did the district court abuse its discretion in admitting evidence that Ugalde had been involved in similar drug transactions on prior occasions? See United States v. Irving, 665 F.3d 1184, 1211 (10th Cir. 2011) ("[O]ur review of a district court's decision to admit evidence under [Rule 404(b)] is . . . subject to an abuse-of-discretion standard.").

Federal Rule of Evidence 404(b) provides:

> **(b) Crimes, Wrongs, or Other Acts.**
>
> > **(1) Prohibited Uses.** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> >
> > **(2) Permitted Uses; Notice in a Criminal Case.** This evidence may be admissible for another purpose, such as

6

proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:

> **(A)** provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
>
> **(B)** do so before trial--or during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b).

"We consider a four factor test when determining the admissibility of evidence under Rule 404(b)." United States. v. Davis, 636 F.3d 1281, 1297 (10th Cir. 2011). The test requires that:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed.R.Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

Id. (quoting United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000)) (citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).

"Rule 404(b) admissibility is a permissive standard and if the other act evidence is relevant and tends to prove a material fact other than the defendant's criminal disposition, it is offered for a proper purpose under Rule 404(b) and may be excluded only under Rule 403." Id. at 1298 (internal quotation marks omitted). "We have consistently recognized the probative value of uncharged acts

7

to show motive, intent, and knowledge, . . . as long as the uncharged acts are similar to the charged crime and sufficiently close in time." Id. (internal quotation marks omitted). "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." Huddleston, 485 U.S. at 686.

Taking the factors one at a time, the first factor is whether the evidence is offered for a proper purpose. The purpose was proper here because the evidence was offered to demonstrate, among other things, that Ugalde had knowledge of the marijuana he was transporting in his truck.

The second factor is whether the evidence is relevant. "To determine the relevance of a prior bad act, we look to the similarity of the prior act with the charged offense." United States v. Brooks, 736 F.3d 921, 940 (10th Cir. 2013). We have identified "several non-exclusive factors" to consider: "(1) whether the acts occurred closely in time; (2) geographical proximity; (3) whether the charged offense and the other acts share similar physical elements; and (4) whether the charged offense and the other acts are part of a common scheme." Davis, 636 F.3d at 1298. Those factors are met here. Both Ugalde and Chavez stated that the three prior deliveries took place within the preceding year. The three deliveries went to Chicago from El Paso, just as this one was supposed to. Each delivery relied on the same deception: transporting a legitimate cargo to hide their illegal purpose. They used the same truck for each delivery. The loads were

packaged in the same way, placed in the same location, and pursuant to the same financial arrangements. And the deliveries were coordinated using the same method: a push-to-talk phone. The prior deliveries were eminently similar to the charged incident.

On top of all that, defense counsel opened the door. "[Ugalde] cannot seek to exclude as irrelevant . . . testimony regarding [the prior deliveries] after opening the door for the government." United States v. Magallanez, 408 F.3d 672, 678 (10th Cir. 2005). Indeed, "[r]ebuttal evidence serves a legitimate purpose consistent with the exceptions listed in Rule 404. It allows a party to explain, repel, contradict or disprove an adversary's proof." Id. at 681 (internal quotation marks omitted). "Admission of rebuttal evidence, particularly when the defendant 'opens the door' to the subject matter, is within the sound discretion of the district court." United States v. Burch, 153 F.3d 1140, 1144 (10th Cir. 1998). By opening the door, Ugalde amplified the probative value of the evidence.

The third factor is whether the probative value of evidence of the prior deliveries is substantially outweighed by its potential for unfair prejudice. We discern no problem here either. The probative value of the evidence was high, because the acts were strikingly similar and defense counsel opened the door. We conclude, therefore, that the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice to the defendant.

The fourth and final factor is whether the trial court was asked to and did

9

give a limiting instruction. Here, the court did give a limiting instruction.

Therefore, the district court did not abuse its discretion in admitting evidence that Ugalde had been involved in similar drug transactions on prior occasions.

Ugalde marshals four arguments against our conclusion; none are persuasive. First, he argues that the government cannot prove that the prior deliveries took place within the same year as the charged incident. Quite to the contrary, the government had statements from both Ugalde and Chavez that the previous deliveries took place within a year of their arrest. What is more, one year is not a *per se* cutoff for 404(b) purposes. See, e.g., United States v. Record, 873 F.2d 1363, 1366, 1372 (10th Cir. 1989) (upholding the admission of evidence of prior acts that occurred two years earlier).

Second, Ugalde points us to our decision in United States v. Commanche, 577 F.3d 1261 (10th Cir. 2009), in which we held that a district court abused its discretion when it admitted evidence that a man, who was charged with injuring two others with a box cutter, had been convicted twice before for battering people with a sharp object. Commanche, 577 F.3d at 1263. The sole disputed issue in Commanche was self-defense. Id. at 1268. We held that the court should not have admitted the 404(b) evidence, because those prior incidents were not relevant to intent when the only issue was self-defense. Id. at 1268-69. Instead, the prior incidents were relevant only to show a propensity to batter with a sharp

10

object, which is not a permissible purpose.  Id.  Here, by contrast, we have a proper purpose: knowledge.  The issue was whether Ugalde knew the marijuana was in the truck.  Evidence that the January trip mirrored the previous drug deliveries was probative of such knowledge.  Therefore, Commanche is inapposite.

Third, Ugalde argues that "the Government did not state with particularity its justification for seeking the admission of Rule 404(b) evidence."  Aplt. Br. at 20.  Our review of the record indicates that the government correctly focused its arguments on knowledge and on rebuttal of the defense's door-opening.  Even if we accepted Ugalde's argument that the government did not state its justification with particularity, however, "the error is harmless as long as a proper purpose is apparent from the record."  United States v. Joe, 8 F.3d 1488, 1496 (10th Cir. 1993).  This record is replete with instances that make the basis for admission apparent.

Fourth, Ugalde argues that his counsel never opened the door.  In short, we disagree.  As the government points out, it made no sense for Chavez to know details about the Wrangler warehouse or the black Cherokee, because Ugalde was supposed to call a push-to-talk phone in order to receive directions on where to deliver the marijuana.  Worse, however, were defense counsel's attempts to impeach Chavez.  Chavez had been instructed by the court not to mention the prior deliveries.  Nevertheless, defense counsel juxtaposed Chavez's statements

11

concerning the prior deliveries with his statements concerning the January delivery, all the while giving the jury the impression that his questioning concerned only the January delivery. Chavez was left without a way to both explain the manufactured inconsistencies and comply with the court's instructions. As the prosecutor put it at trial, "[w]e can drive an 18-wheel truck through the door that he's opened." R. Vol. III at 96.

Finally, even if the district court erred, the error was harmless. See Commanche, 577 F.3d at 1269 ("A harmless error is one that does not have a substantial influence on the outcome of the trial; nor does it leave one in grave doubt as to whether it had such effect." (internal quotation marks omitted)). The evidence of Ugalde's guilt was overwhelming. Not only was Ugalde caught transporting 150 pounds of marijuana, and his partner implicated him in the conspiracy, but also Ugalde *confessed to the crime*, and this confession came into evidence through Agent Jesus Morales, Jr.'s testimony. Even if there was an error to be found here, it did not have a substantial influence on the outcome of the trial.

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Chief Judge